Argued January 10, peremptory writ denied February 1, 1921.

## SUPERIOR OIL SYNDICATE *v.* HANDLEY.

(195 Pac. 159.)

**Banks and Banking—Foreign Common-law Syndicate Held a "Foreign Trust Company," not Under Blue Sky Law.**

1. A syndicate for making brick and refining petroleum, organized under the laws of another, state, seeking permit to 'sell its capital shares or certificates, receiving funds therefor to invest in property which the association shall hold in trust for its shareholders, comes within the purview of Section 6233, subdivision 9, Or. L., and is a "foreign trust company," within Sections 6228, 6257, and is not under the supervision of the corporation commissioner, provided for in the "blue sky law," Sections 6838, 6839, Or. L.

**Statutes—Words Construed According to Plain Meaning and Sense in Harmony With Purpose.**

2. Words of common use are to be taken in their natural and obvious meaning and signification, and that sense of the words should be adopted which best harmonizes with the context and promotes the policy and objects of the legislature.

Statutes—Words and Phrases Construed According to History of Act and Purpose Intended.

3. In determining the meaning of a statute, the particular mischief which it was designed to remedy, the history of the period and of the act itself may be considered, and the statutory meaning of the word or phrase must be gathered from the purpose of the enactment.

Banks and Banking—Foreign Common-law Syndicate Doing Trust Business Held Subject to Trust Company Statutes.

4. Sections 6228, 6233, 6257, Or. L., as to trust companies and regulation of foreign trust companies, apply to foreign unincorporated common-law business syndicates or associations, selling capital shares and holding property in trust for shareholders.

Original proceeding in Supreme Court in *mandamus*.

In Banc.

This is an original proceeding in *mandamus* to require defendant, T. B. Handley, as corporation commissioner of the State of Oregon, to act upon the application of plaintiff, the Superior Oil & Refining Syndicate, organized under the laws of the State of Texas, for a permit to sell in this state what plaintiff denominates capital shares, or certificates, in a common-law business syndicate organized for the purpose of making brick and refining crude petroleum and disposing of the products. The corporation commissioner declined to act upon the application, for the reason that the application did not come under his jurisdiction as corporation commissioner, but that the business proposed to be done by the plaintiff in the State of Oregon under the application and permit would constitute the doing of a trust business, under Chapter VI, Title XXXV, Or. L., providing for the incorporation and regulation of trust companies, and consequently under the supervision of the superintendent of bank. Plaintiff submitted with its application a copy of its Articles of Association, or Declaration of Trust, and various other documents, which are made a part of the alternative writ.

The authorized capital of this syndicate is shown by the declaration to be $500,000, divided into 500,000 shares of $1 each, $180,000 of which has been subscribed. Article IV of the Declaration reads thus:

"All property, real, personal and mixed, acquired by this Syndicate, or by its trustees, under this Declaration of Trust, shall belong to the SUPERIOR OIL & REFINING SYNDICATE, LIMITED, of Fort Worth, Texas, and shall be taken and held in its name, FOR THE USE, BENEFIT AND BEHALF OF THE SHARE-HOLDERS OF SAID SYNDICATE, but the legal title shall, by the use of said syndicate name, vest in the five trustees and their successors in office, hereinafter to be named, and shall be under the exclusive control, management, ownership and direction of said trustees, and their successors in office, who shall have absolute and exclusive power, right, ownership and authority to make all contracts, for and in the name of said syndicate, and all purchases of every description, and all sales, either as a body, or by duly authorized agents. But all contracts shall refer to this Declaration of Trust and be signed in the name of said syndicate, limited, by order of the Board of Trustees, and the chairman of said Board, naming his official capacity, countersigned by the Secretary-Treasurer, who shall attach the seal of the syndicate, and when so signed and sealed shall bind only the said syndicate and all its property, but said Board of Trustees and its members, and the share-holders in said syndicate, shall never be personally liable thereon, nor for any acts or indebtedness, created in the name of said syndicate by said Trustees, or their agents, except to the extent of their unpaid subscriptions, respectively, for shares of its capital, nor shall said Trustees, or any shareholders in this syndicate, ever be liable for any debt or damages, created or caused, or incurred by said syndicate, or its Trustees, officers, managers, employees, or agents, whether arising *ex contractu* or *ex delicto,* unless caused or occurring by his own personal act or default or fraud."

Articles V and VI define the powers and duties of the trustees.   Article VI reads in part as follows:

" * * And said trustees now acting and speaking for themselves, as well as for all future successors in this trust, hereby declare to such subscribers and shareholders, present and future, and to the world, that they will hold in trust all of the property of this syndicate, now in its possession, or to be hereafter acquired by it, together with the profits, proceeds and increase thereof, and income therefrom, for the shareholders of this syndicate during the period of their trusteeship, as aforesaid; to hold the same, and to manage, control, apply and use and dispose of the same, absolutely in the manner and subject to, and in accordance with, the conditions, terms, and stipulations herein contained.   The acceptance of this trust is evidenced and signified by their acceptance of share in this syndicate, as well as becoming signatory thereto, to wit: * * ."

Section 5, under the title "Trustees' Meeting," provides that:

"All investments shall be made and title to all moneys, choses in action and properties shall be held, and all property managed, controlled, and disposed of absolutely by said trustees and their successors under this Declaration of Trust, absolutely and free from all limitations, save and except those specifically set out herein, and said trustees shall have power and authority in conducting the business of this syndicate, to do the following, among other things, to wit: * * "

After which follows a long list of the powers of the trustees.   A copy of the certificate proposed to be sold is set forth in Section 2 of Article VII, and reads thus:

"Capital, $500,000.                         Shares 500,000
                                              $1.00 Each

"SUPERIOR OIL AND REFINING SYNDICATE,
                    LIMITED,
               of Fort Worth, Texas.

"Certificate                    Number of Shares,

..........                         ..........

"This is evidence that ...... is the owner of
...... shares of the capital of the Superior
Oil and Refining Syndicate, Limited, of Fort
Worth, Texas, he having subscribed the sum of $......
and fully paid the same to the Trustees of said syn-
dicate, to be exclusively for the purposes expressed in
the Declaration of Trust, filed by said syndicate in
the office of the Clerk of the County Court of Tar-
rant County, Texas, on the ...... day of November,
A. D. 1919, and duly recorded in book 639 on page
177, of the Deed Records of Tarrant County, Texas.

"The shares named in this Certificate are fully
paid and non-assessable, and entitles the holder there-
of, when duly transferred on the books of said syndi-
cate, to one vote for every share of stock as expressed
herein, and no share-holder in this syndicate shall ever
be liable personally for any debt, damages, judgment
or decree of any Court, incurred or occasioned by said
syndicate, but only the funds and property of said
syndicate can be looked to by creditors, for the pay-
ment of their claims.

"IN WITNESS WHEREOF, the Chairman of the Board
of Trustees of said Syndicate has hereunto signed
his name, and caused the seal of said syndicate to be
hereto affixed, on this, the ...... day of ......, A. D.
19..

                    .................... [L. S.]
                 "Chairman Board of Trustees.

"...................,
        "Secretary-Treasurer."

Section 3 of Article VII provides that:

"The share-holders in this syndicate shall have no right to the trust property, whether personal, real or mixed, and the ownership of the shares hereunder shall not entitle the owner thereof to any title, possession, custody, or control of the trust property, nor shall they have the right to call for a partition, or a division of the same, or a dissolution of the syndicate, or for an accounting; but shares issued hereunder, evidenced by seal as aforesaid, shall be personal property, giving only the rights to a division of the declared net profits, when and as the same may be distributed by the Trustees; and at the termination of the trust hereby created, whether at the expiration of the period fixed for its existence or by voluntary dissolution, or otherwise brought about, to a division of the assets and property of this syndicate; it being fully understood and agreed that absolute control, dominion over and right to dispose of said property, its increase and revenue thereof, so held in trust by said Board of Trustees, is hereby vested in them and their successors during the period of their trusteeship as hereinbefore stated."

Section 4 of Article VII declares in part that:

"The death, insolvency or bankruptcy of any shareholder, the transfer of his or her interest by sale, gift, descent or otherwise, during the continuance of this trust, shall not operate as a dissolution, nor terminate the trust, * * *"

Section 8 of Article VII provides:

"All contracts made by persons, corporations, firms or associations with this syndicate, are required to take notice, by reason of the word "Limited" in the name of said syndicate, and by reason of the record of its Declaration of Trust, and by reason of their contracting with said syndicate name, as is set forth herein, must know and understand that only the funds and property of said syndicate can ever be looked to by creditors for the payment of their claims or debts;

and that the Trustees of said syndicate, and its officers, managers, agents and servants and share-holders, shall never be personally liable for any debt or obligation, express or implied, or for any tort, or negligence sounding in damages, or any injury whatever, occasioned by said syndicate, or its officers, agents, servants or share-holders, nor shall their property ever be subject to the payment of such claims, and the fact of their contract with said syndicate, in its syndicate name, shall be conclusive evidence that they have agreed to waive and do thereby waive, all rights and claims against the share-holders, officers, servants and agents of said syndicate, for the payment of their debts, and agreed to look only to the funds and property of said syndicate for payment."

PROCEEDING DISMISSED.

For plaintiff there was a brief over the names of *Mr. Andrew M. Crawford* and *Mr. J. G. Richardson,* with an oral argument by *Mr. Crawford.*

For defendant there was a brief over the names of *Mr. Isaac H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General, with an oral argument by *Mr. Moore.*

BEAN, J.—1. It is the position of counsel for plaintiff that the syndicate offers to sell its own paper to finance itself, and comes within the purview of the "blue sky law" of this state, to wit, Title XXXIX, Chapter II, Or. L., and therefore under the supervision of the corporation commissioner, and that it is neither a bank nor a trust company within the meaning of our statute.

Section 6838, Or. L., defines a dealer in stocks, bonds, notes, etc. It provides in part as follows:

"The word 'dealer' within the meaning of this act shall include every person, partnership, corporation,

or association which is now engaged, or which shall hereafter engage, in the selling to others at a profit or in the contemplation of so selling, any stocks, bonds, notes, contracts or other securities of whatsoever kind or character; * * And, provided further, that any partnership, domestic corporation, foreign corporation doing business within this state, or association which shall hereafter offer its own securities for sale to the public shall be considered a dealer within the meaning of this act.''

Section 6839 directs what a ''dealer'' shall file with the corporation commissioner before advertising or offering for sale any corporate securities ''to be hereafter issued,'' and then reads thus:

''Provided, however, that the provisions of this act shall not apply to * * (d) state and national bank and trust company stock. * * ''

According to defendant's view, the sale within the State of Oregon of plaintiff's share certificates would constitute the doing of a trust business. Title XXXV, Chapter V, Or. L., deals with the incorporation and regulation of trust companies. Section 6228, Or. L., defines trust business thus:

''A 'trust business,' as that expression is used in this act, means the business of doing any or all of the things specified in subdivisions 1, 3, 4, 5, 6, 7, 8 and 9 of Section 6233.''

Section 6233, as far as deemed material, reads:

''Additional Powers of Trust Companies. In addition to the powers conferred by the general corporation laws, every company shall have the following powers, subject to the restrictions and limitations contained in this chapter: * *

'' (9) *To Act as Trustee in Execution of Private Trust.* To take, accept and execute any and all trusts and powers of whatever nature or description as may be conferred upon or intrusted or submitted to it by

any person or persons, firm, company or any body politic, corporation, foreign or domestic, or other authority by grant, assignment, transfer, devise, bequest, or otherwise, or which may be intrusted or committed or transferred to it or vested in it by order of any court of competent jurisdiction; and to receive, take, manage, hold and dispose of, according to the terms of such trust or power, any property or estate, real or personal, which may be subject to any such trust and power.''

Section 6257 enacts, *inter alia:*

''Regulation of Foreign Trust Companies. No foreign copartnership, firm, joint stock company, association or corporation, shall hold real or personal property in trust in this state, nor act in any trust or fiduciary capacity therein unless it shall have complied with all of the provisions of this act; * * And provided further, that this act shall not apply to any foreign copartnership, firm, joint stock company, association or corporation engaged in the business of loaning money on mortgage security which does not accept deposits or receive from citizens or residents of the State of Oregon property or money in trust on deposit, or for investment.''

The plaintiff may well be designated an association, as indicated in its brief. It is a matter of minor importance whether plaintiff is termed an association or a copartnership (for the distinction see reference to *Frost* v. *Thompson* 219 Mass. 360 [106 N. E. 1009, in note, 7 A. L. R. 623]). In Bouvier's Law Dictionary (3 ed.), Volume 1, page 269, an association is defined as follows:

'' * * In the United States, this term is used to signify a body of persons united without a charter but upon the methods and forms used by incorporated bodies for the prosecution of some enterprise: Abbott, L. Dict.''

In Enc. Dig. Texas Rep., page 275, we find:

"The words 'company' and 'association' may be applied to an ordinary commercial partnership; but they are in mercantile or commercial language, most frequently, and most properly, applied to many persons acting together, through officers or agents, in the prosecution of important enterprises, and it is only where a greater number of persons are associated together than usually constitute a commercial partnership, that they are expected to act, or do in point of fact act through officers: *Mills* v. *State,* 23 Tex. 295, 304."

The real inquiry is: In what business does plaintiff propose to engage? It is clear from its "Declaration of Trust" that it proposes to do a trust business within the State of Oregon. The association desires to engage in the business of receiving money from the citizens of the state, and issue a certificate therefor. After such funds have been so received, and after the same have been invested in property, either real, personal, or mixed, the association in its "Articles" declares that the same "shall be taken and held in its name, for the use, benefit, and behalf of the shareholders of said syndicate." The legal title to all such property of the syndicate is vested in the trustees, who have absolute power over the same, and the certificates issued to purchasers of shares in the syndicate expressly provide that the money paid for the certificates has been paid to the trustees exclusively for the purposes expressed in the Declaration of Trust. Section 2, under the title "Miscellaneous Provisions," page 13, provides in part:

" * * There shall be no personal liability in any event of said trustees, or any of them or of any shareholder, hereunder, save and except the liability which might accrue by reason of the personal breach of trust, upon the part of any trustee or trustees."

The certificate holder is given the right to participate in the profits and in the *corpus* of the property of the concern, in case of its dissolution. It is the bounden duty of the syndicate to execute the trust confided to it by the shareholders in accordance with its declaration of trust, and to "receive, take, manage, hold and dispose of" the money and property, real or personal, acquired and held for the use and benefit of its certificate holders or beneficiaries. We conclude that the business proposed to be transacted by plaintiff comes within the purview of Section 6233, subdivision 9, Or. L. It is a foreign trust company within the letter and spirit of Section 6257, Or. L.

It may be conceded that the plaintiff syndicate has some of the attributes of a "dealer," as described in Section 6838, but it is more than that. It extends into the realm of "trust business," as described and governed by Sections 6228 and 6233, Or. L. The officers of the state are not challenging the right of plaintiff to make contracts by virtue of the common law, or under any law. We are not aware that anyone questions the right of the State, in the exercise of its police powers, reasonably to regulate the business of trust companies within its borders. It is appropriate that the state, through its duly constituted officials, in accordance with the legislative mandate, supervise the execution of such trusts as are contemplated by the declaration of trust of the plaintiff syndicate: *Kimball* v. *Lower Columbia Fire Assn.*, 67 Or. 249, 253 (135 Pac. 877); *Liggett* v. *Ladd*, 17 Or. 89, 95 (21 Pac. 133).

2, 3. In construing a statute, words of common use are ordinarily to be taken in their natural, plain and obvious meaning and signification. That sense of words should be adopted which best harmonizes with the context and promotes in the fullest manner the

policy and objects of the legislature: *City of Portland* v. *Meyer,* 32 Or. 368, 370 (52 Pac. 21, 67 Am. St. Rep. 538); *Caminetti* v. *United States,* 242 U. S. 470 (61 L. Ed. 442, Ann. Cas. 1917B, 1168, 1171, L. R. A. 1917F, 502, 37 Sup. Ct. Rep. 192); *Lake County* v. *Rollins,* 130 U. S. 662, 665 (32 L. Ed. 1060, 9 Sup. Ct. Rep. 651, see, also, Rose's U. S. Notes); 2 Lewis' Sutherland on Statutory Construction (2 ed.), § 390; 25 R. C. L. 968, § 234. In determining the meaning of a statute, the particular mischief which it was designed to remedy and the history of the period and of the act itself may be considered, and the statutory meaning of the word or phrase must be gathered from the purpose for which the statute was enacted: *Northern Counties Trust Co.* v. *Sears,* 30 Or. 388, 395 (41 Pac. 931, 35 L. R. A. 188); *Wiley* v. *Solvay Process Co.,* 215 N. Y. 584, 588 (109 N. E. 606, Ann. Cas. 1917A, 314, 316); *State* v. *Huxford,* 35 R. I. 387, 393 (87 Atl. 171, Ann. Cas. 1915C, 1135, 1138); *State* v. *Bass Pub. Co.,* 104 Me. 288 (71 Atl. 894, 895, 20 L. R. A. (N. S.) 495).

4. Plaintiff claims that the act in regard to trust business relates only to statutory trust companies, and not to common-law trusts. Such character of associations have been in organization for at least twenty-five years: Thompson, Business Trusts, p. 43. They were in existence for a long time before the statute in question regulating trust companies was enacted in 1917. If the law was not intended to apply to an association like the plaintiff, then the people of the state are unprotected from the operations of concerns which have all the powers of a corporation engaged in the trust business, without the restrictions applied to the operation of such corporations. The statute so construed would be unfair and discriminatory. In order to render it practically inefficacious it would only be necessary for corporations to change their form of organi-

zation. We cannot conceive that the statute evinces such a legislative intent.

We conclude that the application of plaintiff for a permit does not come within the jurisdiction of the corporation commissioner. The peremptory writ, therefore, will be denied, and the proceeding dismissed.

DISMISSED.