## King v. Commonwealth.

(Decided December 15, 1922.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. Criminal Law—Contradictory Language in Indictment—Construction.—Contradictory language in an indictment construed so as to conform to its evident meaning upon appeal from a judgment pronounced upon defendant's plea of not guilty and confession that the facts alleged in the indictment were true.

2. Corporations—Sale of Investment Contracts—Blue Sky Law.—A common law trust in an investment company as defined by the Kentucky "blue sky law," section 883e-2, Kentucky Statutes, and required by that law to furnish information and procure the approval of the State Banking Commissioner and a license before selling or offering to sell in this state investment contracts or securities of its issue.

3. Statutes—Constitutional Law.—Such law so construed is not unconstitutional.

EDWARD J. McDERMOTT, EUGENE J. COONEY and BOLDRICK & COOKE for appellant.

CHAS. I. DAWSON, Attorney General, and MARTIN T. KELLEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant was charged by indictment with selling, "as the representative of a domestic investment company known as 'Shareholders Syndicate,'" a contract or security of the company which had not been approved by the state banking commissioner as required by an act known as the blue sky law, now sections 883e-1 to 883e-26, inclusive, of Kentucky Statutes.

His demurrer to the indictment having been overruled, he entered a plea of not guilty but confessed the truth of the facts alleged in the indictment, and by agreement the case was submitted to the court on those facts for judgment. The court adjudged the defendant guilty, and fixed his punishment at a fine of $51.00.

For reversal of that judgment he insists: (1) That the contract or security described in the indictment and sold by him is not required to be approved by the banking commissioner under the terms of the act, and (2) that if it is, the act to that extent is unconstitutional.

Section 16 of the act, under which the indictment was drawn, provides in part:

"It shall be unlawful for any investment company or dealer or representative thereof, either directly or indirectly, to sell or cause to be sold, offer for sale, take subscriptions for, or negotiate for the sale in any manner in this Commonwealth, and contracts, stocks, bonds or other securities (except as expressly exempted herein), unless and until said banking commissioner has approved thereof and issued his certificate in accordance with the provisions of this act, nor shall it be lawful for any such investment company to transact business on any other plan than that set forth in the statement and papers required to be filed by virtue of the provisions of this act or the rules of the banking commissioner."

Since defendant is charged with making the sale as the representative of the "Shareholders Syndicate" and not as a dealer, section nine of the act discussed in the briefs, which defines dealers and requires them to obtain a license to sell securities, is not involved.

Section 2 of the act (883e-2 of the statutes) defines domestic and foreign investment companies, and subsequent sections provide that every such company shall furnish information and procure the approval of the state banking commissioner of "any contract, stock, bonds or other securities of its own issue," and a license before selling or offering to sell same in this state. Since it is not claimed the contract or security sold comes within any exception or exemption of the act, the question of whether or not the sale described in the indictment was in violation of the act depends solely upon whether or not the "Shareholders Syndicate" is, as charged, a domestic investment company as defined by section 2, which reads:

"Every person, corporation, copartnership, company or association (except those whose securities are exempt under the provisions of this act), organized or which shall hereafter be organized in this Commonwealth, whether incorporated or unincorporated, which shall either himself, themselves or itself, or by or through

others, sell or negotiate for the sale of any contract, stock, bonds or other securities issued by him, them or it, within the Commonwealth of Kentucky, shall be known for the purposes of this act as a domestic investment company.

"Every such person, corporation, copartnership or association, a resident of or organized in any other state, territory or government shall be known for the purpose of this act as a foreign investment company."

The "Shareholders Syndicate" and the contract or security sold by defendant are thus described in the indictment:

"The said grand jurors further say that the said Shareholders Syndicate is a 'trust estate,' which is composed of a trustee, to-wit, the said Thomas M. King, and that said trustee sells shares in said syndicate and issues certificates therefor which delegate to said trustee the power to control and direct the said syndicate on behalf of the shareholders therein; and that the sole control and management of the fund realized from the sale of said shares and the management of the affairs of said syndicate are in the hands of said trustee.

"The said grand jurors further say that the said Shareholders Syndicate is not a corporation organized under the laws of any state or Commonwealth, and is not a copartnership, and is not a company, and is not an association, but is a 'trust estate,' in which said Thomas M. King is also the 'trustee,' and the holders of the units of interest are the beneficiaries, and say that said syndicate is a conveyance and grant by the subscribers thereto of the sole and exclusive power or management and control thereof through the trustee who promotes the said syndicate and sells the shares therein; and that the said syndicate is an association of persons individually contributing to a common unincorporated enterprise as beneficiaries of a trust, of which the promoter and salesman of such enterprise is made the trustee by the terms of the sale of the shares therein; and that the said Thomas M. King is the organizer and promoter of said syndicate, and the salesman of the shares therein, and the trustee created and designated by the terms of sale of said shares in said syndicate to the subscribers thereto, who by said sale become the beneficiaries of the trust of which the said King, acting in the name of 'Shareholders Syndicate,' is the trustee.

"The grand jurors further say that the only evidence of the contract or agreement between the said trustee and the shareholders in said syndicate and of the plan or basis of operation of said syndicate, and the status thereof, is contained in the certificate which was issued by said trustee, the said defendant, to the shareholders in said syndicate, and which is in words and figures as follows, to-wit:

"No. 54                    .................1...............Units

CAPITALIZATION $100,000.00.

SHAREHOLDERS SYNDICATE,

Louisville, Ky.

A TRUST ESTATE.

" 'THIS CERTIFIES that Mrs. Mary L. Gray is the holder of ..............One.............. Units of Interest, fully paid and non-assessable, in the SHAREHOLDERS SYNDICATE, subject to all the terms of its declaration of trust, dated September 1st, 1921, and recorded in its trustee's office in Louisville, Kentucky, and transferrable on the books of the organization in person or by attorney upon surrender of this certificate properly endorsed.

"IN WITNESS WHEREOF, the said organization has caused this certificate to be signed by its trustee, and its seal to be hereunto affixed at Louisville, Kentucky, this the 22 day of December, 1921.

THOS. M. KING, Trustee.

" 'SHAREHOLDERS SYNDICATE
    A Trust Estate                    Units
      1921                         $10.00
      Seal                         EACH.' "

Louisville, Ky.

It is clearly apparent from the form of the certificate as well as from what it is alleged the "Shareholders Syndicate" is and is not, that it is a common law trust of the Massachusetts type, and that it is not, therefore, strictly speaking, or technically, a corporation, a company, a copartnership or an association. It is also clearly apparent that these denials in the indictment were not intended to, and do not mean that it is not an investment company as defined above, or such an association of persons as is necessary in the formation or creation of a trust estate, since immediately following these negations it is alleged to be a trust estate, and an association of

persons. And as defendant confessed the truth of these latter allegations he will not, after judgment, be allowed to take advantage of the seeming but not real contradictions in the language employed in describing a trust estate, so evidently intended to be described, despite the inartificial manner in which it is done, if we must give to the denial that the ''Shareholders Syndicate'' is a company or organization of persons the effect of annulling the allegations that it is a trust estate and such association of persons as is required to create such an organization, which is neither a corporation nor a copartnership, nor yet an ordinary company or association but which nevertheless has some of the attributes of all these more common organizations for the co-operative employment of the means of many people in a business venture.

We may therefore dismiss without further discussion the contention that the ''Shareholders Syndicate'' is not an investment company under the act because it is neither a person nor a corporation, and is alleged not to be a copartnership, a company or an association.

This brings us to a consideration of whether or not a common law trust is ''a person, corporation, copartnership, company or association'' within the contemplation of the legislature in enacting this act, for unless so, such an organization or thing is not required to have securities it may sell previously approved by the banking commissioner.

We cannot refrain from saying at the outset, that if the language employed does not include a common law trust, it is in our confident judgment in view of the evil the legislature was trying to cure, or at least mitigate, the result of inadvertence rather than design, because unquestionably the general purpose of the legislature was to forbid the sale in this Commonwealth of every kind of investment contract, whatever its name and however issued, that in the judgment of the banking commissioner did not have a chance at least to produce income for the investor, without which it could not properly be called a ''contract, stock, bond or other security'' as these terms are constantly employed throughout the act.

Conceding that if this general purpose is not clearly expressed, there is both sound reason and eminent authority to the effect we ought not to stretch the fair meaning of the language of this, a penal statute, to make it conform to our ideas of the general purpose the legislature had in view; we are yet of the opinion such author-

ity is not applicable here because of a conviction that the very language employed in forming this section of the act, fairly construed, includes a common law trust, and that the general legislative purpose may be considered in construing the meaning of the language employed.

It will be noticed the definition is that: "Every person, corporation, copartnership, company or association, organized or which shall hereafter be organized in this Commonwealth, whether incorporated or unincorporated, which shall either himself, themselves, or itself, or by or through others, sell or negotiate for the sale of any contract, stock, bonds or other securities issued by him, them or it within the Commonwealth of Kentucky, shall be known for the purposes of this act as a domestic investment company."

We do not see how language could have been more general and all-inclusive for it expressly includes individuals and all—"his, them and it"—associations of individuals organized or that may be organized, whether incorporated or not. Besides the legislature has, in subsequent sections of the act, carefully enumerated every kind of investment contract or security that it did not intend its issuer should have approved before offering it for sale.

Hence, it seems to us too plain for argument that the definition of an investment company literally and necessarily includes a common law trust, the distinguishing features of which are too well understood to require explanation, even though in this state they have not been so frequently encountered as they would be in the immediate future if appellant's contention should be upheld by this court in the face of the unanimous opinion of many courts that have rejected it as unsound in construing almost identical language in similar statutes. See People v. Clum, — Mich. —, 182 N. W. 136, 15 A. L. R. 253, and Home Lumber Co., et al. v. Hopkins, 107 Kansas 153, 190 Pac. 601, 10 A. L. R. 879, directly in point, and the following cases more or less related: Ex Parte Girard, 186 Cal. 718, 200 Pac. 593; State v. Gopher T. & T. Co., 146 Minn. 52, 177 N. W. 937; McCamey v. Hallister Oil Co., — Tex. —, 241 S. W. 689; Schmidt v. Stoltz, — Kansas City Court of Appeals, —, 236 S. W. 694.

2. The argument in behalf of the contention that the act so construed abridges the right to own property and freely contract with reference thereto, in contravention

of rights declared to be inalienable and guaranteed to all persons by the state and Federal Constitutions, is in our judgment wholly lacking in merit.

This could not possibly be true with regard to a common law trust without being true with reference to individuals and unincorporated associations; nor is the law more restrictive of inalienable rights than are laws universally recognized as within the police power of the state requiring that individuals, for the common weal, before practicing the profession of law or medicine or what not, shall prove their fitness to and procure a license from a designated tribunal.

There is no claim that the state banking commissioner is vested with arbitrary power or that the act, if within the legislative power of the state, is unfair, arbitrary or unreasonable in its terms or the manner or methods provided for enforcing it.

The whole contention is that the state is without power to enact any law regulating or restricting the power to contract of an individual or association of individuals who do not, like corporations, receive the power to contract from the state, upon the sole ground that to do so would deprive such individuals of their inalienable and constitutional rights of life, liberty and property without due process of law, etc.

There is nowhere among free people any doubt of or disposition to contest the right of the individual to freely contract with reference to his property, or that this right is fully protected by the state and Federal Constitutions, but as one individual's absolute right of freedom in all matters ends where another's begins, it is universally recognized that in order to secure the right to all and for the common good, the sovereign state within its indefinable police power may and often must prescribe reasonable regulations for the exercise thereof.

There being, as before stated, no claim that any administrative feature of the law is arbitrary or unreasonable, we need not devote space to prove it to be a valid exercise of the police power, since like laws enacted in most of the states have been upheld and the contention of defendant denied not only by the state courts without exception, but by the Supreme Court of the United States as well.

We, therefore, deem it a sufficient answer to defendant's contention to cite without further elaboration, the case of Hall v. Geiger-Jones Co., etc., 242 U. S. 539; the

many cases cited in the comprehensive note following that case as reported in L. R. A. 1917F 514; Merrick v. Halsey, 242 U. S. 568; Caldwell v. Sioux Falls Stockyards Co., 242 U. S. 559, with all of which we heartily agree in so far as they are involved here and hold that a state, under its police powers, may regulate the sale of investment securities by individuals or any kind of association of individuals, as does our blue sky law, without infringing upon any personal or property right guaranteed by the state and Federal Constitutions.

Judgment affirmed.