[Civil No. 2216.  Filed March 4, 1925.]

[234 Pac. 35.]

JOHN I. REILLY, GEORGE T. FISHER, E. R. SWARTHOUT and WALTER P. CAPEHART, Trustees Operating Under a Declaration of Trust as THE INTERNATIONAL INVESTMENT AND CONSTRUCTION ASSOCIATION, Appellants, v. MEADE CLYNE, Appellee.

1. LICENSES—INVESTMENT ASSOCIATION, OPERATING UNDER DECLARATION OF TRUST, HELD A CORPORATION AND AMENABLE TO LAWS GOVERNING INVESTMENT COMPANIES.—Investment association, operating under a declaration of trust, providing that neither trustee nor *cestuis que trust* should be personally liable as partners, or otherwise, and that trust debt should be a liability against trust fund only, *held* a corporation, in view of Constitution, article 14, section 1, Civil Code of 1913, paragraph 2099; paragraphs 2096, 2097, 2100, 2101, and amenable to paragraph 2259, governing investment companies; paragraphs 2260, 2264, being inapplicable and not having complied therewith, its sale of stock to defendant was illegal.

2. LICENSES—ACTS DONE IN DISREGARD OF BLUE SKY LAWS ARE UNENFORCEABLE.—Acts done in disregard of Civil Code of 1913, paragraph 2270, making it a misdemeanor to sell stock or other securities before complying with Blue Sky Laws, are invalid and unenforceable.

3. LICENSES—PURCHASER OF SHARES HELD NOT ESTOPPED TO DENY LIABILITY ON NOTE GIVEN IN PAYMENT FOR STOCK.—Purchaser of

---

1. Interpretation and validity of "Blue Sky Laws," see notes in Ann. Cas. 1916A, 706; Ann. Cas. 1917C, 650; 15 A. L. R. 262; 24 A. L. R. 524; 27 A. L. R. 1169.

Validity of "Massachusetts Trusts," see notes in 7 A. L. R. 612; 10 A. L. R. 887.

shares in business trust was not estopped to deny liability on note given in payment of shares, where its sale to him was illegal.

4. CONTRACTS—PARTY CANNOT ASK TO HAVE HIS ILLEGAL OBJECTS CARRIED OUT.—Generally, a party under an illegal contract cannot ask to have his illegal objects carried out by courts.

5. LICENSES—PURCHASER OF SHARES HELD NOT IN PARI DELICTO WITH TRUST SELLING SHARES IN VIOLATION OF LAW.—Purchaser of shares in business trust was not *in pari delicto* with trust so that he would be denied relief on note executed for shares, where trust's act in selling shares to him was a misdemeanor, under Civil Code of 1913, section 2270.

6. LICENSES—PURCHASER OF SHARES HELD NOT ESTOPPED BY PARTICIPATION IN TRUST'S AFFAIRS TO DENY LIABILITY ON NOTE.—Purchaser of shares in business trust was not estopped by participation in affairs of trust, to deny liability on notes given in payment of shares, where it was subsequent to transaction out of which notes arose.

7. ESTOPPEL—PURCHASER OF SHARES IN BUSINESS TRUST HELD NOT ESTOPPED BY PLEADINGS IN FORMER SUIT TO DENY LIABILITY ON NOTE.—Purchaser of shares in business trust was not estopped to deny liability on notes given in payment of shares by his pleadings in a former suit, admitting that one of considerations of notes was that he should be made a trustee, where it affirmatively showed that he never became such trustee.

See (1) 39 Cyc., p. 34 (1926 Anno.); 25 Cyc., p. 615 (1926 Anno.). (2) 25 Cyc., p. 615 (1926 Anno.). (3) 39 Cyc., p. 34 (1926 Anno.). (4) 13 C. J., p. 493. (5) 39 Cyc., p. 34 (1926 Anno.); 25 Cyc., p. 615 (1926 Anno.). (6) 39 Cyc., p. 34 (1926 Anno.). (7) 21 C. J., p. 1066.

APPEAL from a judgment of the Superior Court of the County of Pima. George R. Darnell, Judge. Affirmed.

Messrs. Richey & Richey, for Appellants.

Mr. James R. Dunseath and Messrs. Curley & Pattee, for Appellee.

ROSS, J.—The plaintiffs, alleging themselves to be the trustees of the International Investment & Con-

4. See 6 R. C. L. 692.

struction Association, brought this action against defendant to recover on a promissory note made by defendant to plaintiffs in their collective name. The payee is what is known as a common-law business trust, or what is generally designated in this country as the "Massachusetts Trust." The declaration of trust, it is asserted by plaintiffs, which we find to be true, is almost identical with that involved in *Williams* v. *Milton,* 215 Mass. 1, 102 N. E. 355, which was held by that court to be "an investment trust and nothing more."

The defendant subscribed for 5,000 shares, or units, of the International Investment & Construction Association, and agreed to pay therefor in four promissory notes for $1,250 each. He paid three of these notes, but refused to pay the fourth one, and this suit was instituted by plaintiffs to recover on it. No certificate has been issued to defendant.

These things all appear in the pleadings. By reason of plaintiffs' character, as thus exhibited, defendant contends. they have no standing in court; it appearing that they have failed to comply with the laws of the state in reference to corporations, associations, and joint-stock companies, or our Blue Sky Laws concerning investment companies. The defendant on these grounds resists the payment of the note sued on, and counterclaims for money had and received for the $3,750 theretofore paid.

The judgment denied plaintiffs any relief and went against them as trustees for the amount of the counterclaim.

The plaintiffs by their assignments present these questions for determination: (1) They assert that the payee of the note is a true trust, and not a corporation, or joint-stock association, or company, or copartnership, or an association, and hence does not come under the jurisdiction or control of the stat-

utes of Arizona; (2) that defendant, having dealt with the trust as a trust, knowing its character, is now estopped to deny or question the same; (3) that the state alone can question the plaintiffs' legality or capacity; and (4) conceding the transaction was illegal and void, defendant was *in pari delicto* with plaintiffs, and therefore not entitled to any relief.

In support of their first contention plaintiffs cite *Williams* v. *Milton, supra; Crocker* v. *Malley,* 249 U. S. 223, 2 A. L. R. 1601, 63 L. Ed. 573, 39 Sup. Ct. Rep. 270, and *Eliott* v. *Freeman,* 220 U. S. 178, 55 L. Ed. 424, 31 Sup. Ct. Rep. 360 (see, also, Rose's U. S. Notes).

These cases involve revenue laws and the right to collect taxes against the certificate holders of business trusts. They all recognize the legality of such trusts in the jurisdictions involved and, because of the wording of the revenue laws, hold that such shares were not subject to taxation. In *Eliott* v. *Freeman* the question was whether such certificates could be taxed under a law which imposed a tax on "every corporation, joint-stock company, or association, organized for profit, and having a capital stock represented by shares . . . now, or hereafter organized *under* the laws of the United States or of any state or territory. . . . " Since the trust involved in that case was not organized under the laws of the United States, or of any state or territory, it clearly did not fall within the terms of the statute. The question involved in the other two cases is of a like nature.

The defendant's contention is that these decisions are not controlling in this state, because of the provisions of our Constitution and the statutes. Section 1 of article 14 of the Constitution is as follows:

"The term 'corporation,' as used in this article, shall be construed to include all associations and

joint-stock companies having any powers or privileges of corporations not possessed by individuals or copartnerships, and corporations shall have the right to sue and shall be subject to be 'sued, in all courts, in like cases as natural persons."

This language of the Constitution is incorporated as paragraph 2099 of the Civil Code of 1913, being a part of chapter 2, title 9, entitled "Corporations in General," and extends to all associations and joint-stock companies described in title 9. Paragraph 2096 provides that any number of persons may associate themselves together and become incorporated for the transaction of business, but that such corporations shall have no powers or privileges not possessed by natural persons, except as provided by law. The exceptional powers and privileges granted to corporations are enumerated in paragaph 2097 as follows:

"(1) To have perpetual succession.

"(2) To sue and be sued by the corporate name.

"(3) To have a common seal and alter the same at pleasure.

"(4) To render the shares or interest of stockholders transferable and prescribe the mode of making such transfers.

"(5) To exempt the private property of members from liability for corporate debts.

"(6) To make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals now enjoy.

"(7) To establish by-laws and make all rules and regulations deemed expedient for the management of their affairs not inconsistent with the Constitution and laws of the state of Arizona."

It is said plaintiffs are exercising powers and privileges not possessed by individuals, or copartnerships, and that such powers and privileges are denied them, unless they comply with the above and other provisions of the law. Among the privileges to be exercised by plaintiffs under their declaration of

trust, not common to individuals, or copartnerships, are that neither the trustees nor the *cestuis que trust* are personally liable as partners or otherwise, and that the trust debts shall be a liability against the trust fund only.

The *cestuis que trust,* or certificate holders, are not personally liable in any event. Only incorporations and their stockholders can claim these rights. The trust property is held during the existence of the trust agreement free from the rules of tenants in common, and the trust is not dissolved by the death of a certificate holder or trustee. In these respects. it is unlike a copartnership, since the death of a copartner dissolves the partnership. A stockholder may negotiate his certificate without the consent of other stockholders. This a partner may not do and the partnership continue. The trust business is owned and managed entirely by the trustees, or a majority thereof, free of the will of the certificate holders, whereas in a copartnership all the partners participate in the management of their business. The trust has power to sue, and be sued, to purchase, receive, hold, mortgage, and grant lands and chattels in the collective name of the trustees, who are empowered to invest and reinvest the trust funds without consulting shareholders. It has perpetual succession. These powers are not enjoyed by. copartners or by individuals. Exercising, as the International Investment & Construction Association has undertaken to do under its declaration of trust, so many of the powers and privileges of a corporation, the question is whether it may do so, or whether the laws of the state were not intended to require such an association before exercising such powers and privileges to conform with the laws governing corporations, associations, and joint-stock companies, and especially

those laws governing such companies when dealing in investments.

Many of the states of the Union have constitutional provisions like ours defining what are corporations. But the question that we have here does not seem to have been directly passed upon very many times, which perhaps may be accounted for from the fact that the legislatures of the different states have not until more recent years enacted laws giving to state boards, such as our Corporation Commission, visitorial and inquisitorial powers over corporations, joint-stock companies, and associations, with a view of protecting the public by seeing that their securities are worthy and their purposes honest. Two courts, in one form or another, have recently passed upon the question. In *Home Lumber Co.* v. *Hopkins,* 107 Kan. 153, 10 A. L. R. 879, 190 Pac. 601, it was held that the Massachusetts Trust was a corporation within the meaning of section 6, article 12, of the state Constitution (our section 1, article 14), since under its organization agreement it claimed to exercise and enjoy powers and privileges not possessed by individuals and copartnerships, and could sell securities and stocks only by conforming to the regulations imposed by statute upon corporations. In *Harris* v. *United States, etc.,* 110 Kan. 532, 204 Pac. 754, the syllabus is as follows:

"A 'Massachusetts Trust' is a corporation within the meaning of that word as defined in section 6 of article 12 of the Kansas Constitution as including 'all associations and joint-stock companies, having powers and privileges not possessed by individuals or partnerships,' and as used in statutes the subject matter of which makes the definition pertinent and within the reason of the legislation."

In the more recent case of *Hamilton* v. *Young,* 116 Kan. 128, 35 A. L. R. 496, 225 Pac. 1045, it was said concerning the same point:

"When it was conceded, for momentary purposes, the Victory Oil Company is a trust, attention was confined to what the association would be, without regard to any statute or equivalent of a statute applying to it. The quoted section of the Constitution says 'all associations,' etc. It would be idle to debate whether the trustees and shareholders of the Victory Oil Company formed an association within the meaning of the section. Looking again at the trust instrument, we discover it provides for an association having many powers and privileges not possessed by individuals and partnerships. Therefore the notion of a simple trusteeship, governed by familiar principles of equity, is not adequate as a basis for decision of the controversy."

In *State* v. *Hinkle,* 126 Wash. 581, 219 Pac. 41, the court held section 5 of article 12 of the state Constitution (our section 1, article 14) comprehended a common-law business trust, or trust of the Massachusetts type, since such a trust exercised and enjoyed powers and privileges not possessed by individuals and copartnerships, with the following comment:

"Article 1, section 29, of our Constitution [our section 32, art. 2] provides that 'the provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise.' Under the mandatory provisions of the Constitution, the so-called common-law trust is prohibited from doing business within this state. Our corporation laws are sufficiently broad to include every desired form of organization, and there is no reason for resorting to this form of organization, except for the purpose of avoiding the payment of the fees, assessments, and taxes imposed upon corporations in general, and to avoid their statutory regulations. It would seem that the framers of our Constitution anticipated such tendency, and wisely provided that the term 'corporations' should include 'all associations and joint-stock companies having any powers or privileges of corporations not possessed by individuals or partnerships,' and thereby prevented the formation of the self-organized associations of every kind for the pur-

pose of transacting business without meeting the obligations and complying with the statutory regulations of corporations. The plaintiffs have no legal status in this state, and are without legal standing in this court.''

We are in accord with these courts in holding the Massachusetts Trust to be in all essentials a corporation as defined by our laws and, if it is a corporation, before it may sell its stock, bonds, and securities, the law makes it imperative that it adopt, publish, and file with the Corporation Commission articles of incorporation. Paragraphs 2100, 2101, Civ. Code 1913.

If we entertained any doubt as to whether the plaintiffs in their collective name fall within the constitutional and statutory definition of a corporation, we certainly think the terms of our statute concerning investment companies broad enough to include them. Paragraph 2259 provides:

''Every corporation, every copartnership or company, and every association . . . organized, or which shall be organized, in this state, whether incorporated or unincorporated, which shall sell or negotiate for the sale of any stock, bonds, or other securities of any kind or character . . . to any person or persons in the state of Arizona, . . . shall be known for the purposes of this chapter as a domestic investment company. Every such investment company organized in any other state, or government, or organized under the laws of any other state or government, shall be known for the purposes of this chapter as a foreign investment company.''

There are some exceptions stated, but plaintiffs do not fall within them. Paragraph 2260 provides that such investment companies, before offering for sale, or attempting to sell, any stock, bonds or other securities, or transacting any business of any kind, shall file with the Corporation Commission a statement showing in full detail the plan upon which it proposes to transact business, a copy of all contracts,

bonds or other instruments which it proposes to make or to sell to its subscribers, and a statement which shall show the name and location of the investment company, and an itemized account of its actual financial condition, etc. Paragraph 2264 prohibits such investment company from transacting or doing any business until it has complied with the foregoing requirements.

We think the courts are practically unanimous in holding the Massachusetts Trust amenable to the requirements and exactions of the above statutes, commonly known as the Blue Sky Laws. The aim of the courts has been to carry out the manifest intention of the statutes, of preventing the public from being imposed upon by questionable and unsound financial schemes of fortune dreamers and dishonest promoters, and to reach all get-rich-quick schemes offering to the general public their stocks and securities, under whatever name they may choose to act. The injury and opportunity for imposition are no less when the purveyor of such stocks and securities is a trust of the Massachusetts type than when it is a corporation, copartnership, company or association. Such a trust certainly falls within the evil intended by the lawmakers to be prevented as much as any other organization engaged in the business of selling stocks and securities to the public. Being within the evil, no good reason is apparent why it should be exempt from complying with these statutes. The name or the manner of organizing or functioning of such a trust is not so sacrosanct as to assure its paper sound or a safe investment, or to give it immunity to the laws of the land.

In *King* v. *Commonwealth*, 197 Ky. 128, 27 A. L. R. 1159, 246 S. W. 162, the court was considering a statute of that state, much like our paragraph 2259, and it said:

"We are . . . of the opinion . . . that the very language employed in forming this section of the act, fairly construed, includes a common-law trust, and that the general legislative purpose may be considered in construing the meaning of the language employed."

In *Wagner* v. *Kelso,* 195 Iowa, 959, 193 N. W. 1, it was contended that the word "stock," as it appeared in the Iowa Blue Sky Law, meant only corporation stock or shares. The court said:

"It may be admitted that more often than otherwise the word 'stock' is used with reference to the shares issued by private corporations, but it is equally true that in common parlance it is often used in a broader and more general sense of shares in voluntary associations and other enterprises in which many contribute shares for the promotion of some common purpose."

For other cases holding the same, see *People* v. *Clum,* 213 Mich. 651, 15 A. L. R. 253, 182 N. W. 136; *Home Lumber Co.* v. *Hopkins, supra; Malley* v. *Bowditch,* 259 Fed. 809, 7 A. L. R. 608, 176 C. C. A. 609; *State* v. *Gopher,* 146 Minn. 52, 177 N. W. 937; *State* v. *Summerland,* 150 Minn. 266, 185 N. W. 255; *State* v. *Evans,* 154 Minn. 95, 191 N. 'W. 425; *Superior Oil* v. *Handley,* 99 Or. 146, 195 Pac. 159; *State* v. *Cosgrove,* 36 Idaho, 278, 210 Pac. 393.

Paragraph 2270 makes it a misdemeanor for any person or agent to sell or attempt to sell any stocks, bonds or other securities of any investment company before complying with the provisions of the Blue Sky Laws. Acts done in disregard of this penal statute are, under the general rules of the law, invalid and unenforceable. The rule in that regard is stated in 25 R. C. L. 979, section 228, as follows:

"Where a statute pronounces a penalty for an act, a contract founded on the act is void, although the statute does not declare such contracts to be void nor expressly prohibit them."

Having reached the conclusion that the International Investment & Construction Association is, under the laws of this state, a corporation, or association, and amenable to the laws governing investment companies, and it not having complied with those laws, its sale of its stock or shares to defendant was in violation of law. It follows, then, that the plea of estoppel is easily disposed of. The rule applicable to such a state of facts we believe is well stated in 5 Fletcher, Cyc. Corp., section 3486, as follows:

"Stock issued without authority and in violation of law is void, and confers no rights on the person to whom it is issued, and subjects him to no liabilities. A contract to issue stock in violation of the provisions of the Constitution or of the statute will not be enforced by the courts, nor can damages be recovered for its breach. A person may rescind his contract to subscribe for or purchase such stock and recover back what he has paid for it, upon a tender back or surrender of the certificate, and of any dividends which he has received; or he may set up the illegality of the stock as a defense to an action by the corporation on his subscription. And, since such a contract is illegal and void, it is incapable of ratification. If there is an inherent lack of power in the corporation to issue the stock, neither the corporation nor the person to whom it is issued is estopped to question its validity."

See, also, 10 R. C. L. 801, § 112; *Scovill* v. *Thayer,* 105 U. S. 143, 26 L. Ed. 968 (see, also, Rose's U. S. Notes); *Harrill* v. *Davis,* 168 Fed. 187, 22 L. R. A. (N. S.) 1153, 94 C. C. A. 47; *Pruitt* v. *Okl. Steam Baking Co.,* 39 Okl. 509, 135 Pac. 730; *Colby* v. *Title Ins. & Tr. Co.,* 160 Cal. 632, Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913; *Milliken* v. *Haner,* 184 Ky. 694, 212 S. W. 605.

It is not necessary to consider what might be the effect of the conduct of defendant by way of estoppel

if the transaction out of which the note grew had not been in violation of positive law, and we therefore do not enter into that aspect of the case. The contract, being in violation of law, was incapable of ratification.

It is next contended that the state alone can question the legality or capacity of the plaintiffs, and in support of this contention cases are cited holding that *ultra vires* transactions of corporations may be questioned by the state only. This rule has no place in a transaction of the kind we have here. 10 R. C. L. 801, § 112; *Melody* v. *Great N. R. Co.*, 25 S. D. 606, Ann. Cas. 1912C, 727, 30 L. R. A. (N. S.) 568, 127 N. W. 543.

It is also contended that the defendant and the plaintiffs were *in pari delicto*, and that therefore the court should wash its hands of this whole matter. The facts disclosed by the pleadings are that the plaintiffs in their collective name of the International Investment & Construction Association sold to the defendant 5,000 units or shares of the association's stock. As we have found, this the plaintiffs had no right to do, not having complied with the Blue Sky Laws. Paragraph 2270, *supra*, makes the act of the plaintiffs in selling or offering to sell stock of the association a misdemeanor. It does not, however, impose any penalty upon one purchasing such stock. The wrong and the penalty both attach to the seller, not to the buyer. Unquestionably the general law is that a party to an illegal contract cannot come into court and ask to have his illegal objects carried out, but where the parties are not *in pari delicto*, and where the law which makes the agreement unlawful was intended for the special protection of the one seeking relief, the rule is different. 9 Cyc. 550. As is said in *Tracy* v. *Talmage*, 14 N. Y. 162, 67 Am. Dec. 132:

" . . . It is safe to assume that, whenever the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as *par delictum.* . . . 'And it is very material that the statute itself, by the distinction it makes, has marked the criminal, for the penalties are all on one side.' "

The general rule is found in 13 C. J. 499, section 443, and is stated as follows:

"The complaining party is especially protected by the law where the agreement is not illegal *per se* but is merely prohibited, and the prohibition was intended for his protection, and in such case, not being *in pari delicto,* he is entitled to relief. The fact that the penalty is imposed on one of the parties alone shows clearly that the law does not consider them *in pari delicto.*"

The purpose of the Blue Sky Laws is to protect the public against imposition. The defendant was one of the public for whose benefit the law was enacted, and it is said in *Browning* v. *Morris,* 2 Cowp. 790, where a law is enacted "for the sake of protecting one set of men from another set of men . . . there the parties are not *in pari delicto.*" The rule thus announced has been recognized and enforced in the following cases: *Irwin* v. *Curie,* 171 N. Y. 409, 58 L. R. A. 830, 64 N. E. 161; *Am. Nat. Ins. Co.* v. *Tabor,* 111 Tex. 155, 230 S. W. 397; *Inhabitants of Worcester* v. *Eaton,* 11 Mass. 368; *Ferguson* v. *Sutphen,* 8 Ill. (3 Gil.) 547; *Gray* v. *Roberts,* 2 A. K. Marsh. (Ky.) 208, 12 Am. Dec. 383; *Knowlton* v. *Congress & Empire Spring Co.,* 14 Fed. Cas. 796 (Case No. 7903).

As bearing upon the questions of *pari delicto* and estoppel, the plaintiffs in their reply to defendant's answer and counterclaim set up that after defendant had bought the 5,000 shares or units of stock he actively participated in the plaintiffs' affairs and acted for a short time as a trustee. They also set

up in reply that defendant had brought some kind of suit against plaintiffs, involving his notes and their validity, in which he alleged as a part of the consideration for notes a promise on the part of plaintiffs to make him a trustee, which promise had been breached by plaintiffs. The defendant's demurrer to these replies was sustained and properly so, as we think, for the reason that the replies show defendant's active participation in the plaintiffs' business was subsequent to the transaction out of which the notes arose, and therefore not *in pari delicto,* and for the further reason, that if the defendant's pleadings in the former suit admitted that one of the considerations of notes was that he should be made a trustee, at the same time it affirmatively shows he never became such trustee. Therefore, if he became a trustee, it was subsequent to the time he bought the 5,000 shares of stock, and, if he did not become a trustee, it does not enter into the question. Besides, who can tell but that the dainty morsel of office held out to defendant may have been the inducing cause of his unfortunate financial venture. He was not at the time of such transaction one of the original organizers of the association but one of the public for the protection of whom the Blue Sky Laws were enacted.

Being satisfied that the judgment of the lower court was correct, our order is one of affirmance.

McALISTER, C. J., and LOCKWOOD, J., concur.