## STATE OF NORTH DAKOTA EX REL. CLAUDE ROSSEN, Petitioner, v. ROLLIN WELCH, Respondent.

(172 N. W. 234.)

**Fraud — sale of speculative securities — writ of habeas corpus denied.**

> Claude Rossen, having been arrested for violation of the so-called "Blue Sky Law" (Laws 1915, chap. 91), applies for a writ of habeas corpus. He claims that the criminal complaint fails to set forth facts showing that he sold "speculative securities," within the purview of said act. For reasons stated in the opinion, it is *held* that the contract or certificate which he sold was a "speculative security" within the meaning of that term as defined by the "Blue Sky Law" of this state.

Opinion filed March 19, 1919.

Original application by Claude Rossen for a writ of habeas corpus against Rollin Welch, sheriff of Burleigh county. Writ denied.

*E. T. Burke,* for petitioner.

*William Langer,* Attorney General, *Edw. B. Cox,* and *Geo. K. Foster,* Assistant Attorney Generals, for respondent.

CHRISTIANSON, Ch. J. This is an original application for a writ of habeas corpus presented to this court after a denial of an application for such writ by Judge Nuessle of the sixth judicial district. It appears from the petition, that the petitioner has been arrested and is held in the custody of the sheriff of Burleigh county by virtue of a commitment duly issued by a justice of the peace in Burleigh county, in a criminal action properly instituted before him, wherein the petitioner is charged with violating the provisions of the so-called "Blue Sky Law;" to wit, chapter 91, Laws 1915. The act makes it "unlawful for any person,

copartnership, association, or corporation, . . . either as principal, or through agents, to sell or offer for sale (except to banks, bankers, trust companies, dealers, or brokers in securities, corporations, or partnerships) or by means of any advertisement, circulars, or prospectus, or by any other form of public offering, to attempt to promote the sale of any speculative securities in this state, unless there first shall have been filed with the state examiner: (1) A copy of the securities so to be promoted; (2) a statement in substantial detail of the assets and liabilities of the person or company making and issuing such securities and of any person or company guaranteeing the same, including specifically the total amount of such securities and of any securities prior thereto in interest or lien, authorized or issued by any such person or company; (3) if such securities are secured by mortgage or other lien, a copy of such mortgage or of the instrument creating such lien, and a competent appraisal or valuation of the property covered thereby, with a specific statement of all prior liens thereon, if any; (4) a full statement of facts showing the gross and net earnings, actual or estimated, of any person or company making and issuing or guaranteeing such securities, or of any property covered by any such mortgage or lien; (5) all knowledge or information in the possession of such promoter relative to the character or value of such securities, or of the property or earning power of the person or company making and issuing or guaranteeing the same; (6) a copy of any general or public prospectus or advertising matter which is to be used in connection with such promotion, and no such prospectus or advertising matter shall be used unless the same has been filed hereunder; (7) the names, addresses, and selling territory in this state of any agents by or through whom any such securities are to be sold, and no such agents shall be employed unless such statement with respect to them has been filed hereunder, and there shall have been paid to the state examiner a registration fee of $1 for each such agent. The payment of such fee shall be payment in full of all fees for registration of such agent until and including the first day of March next following; (8) the name and address of such promoter, including the names and addresses of all partners, if the promoter be a partnership, and the names and addresses of the directors or trustees, and of any person owning 10 per cent or more of the capital stock, if the promoter be a corporation or association; (9) a statement showing in detail the plan on

which the business or enterprise is to be transacted; (10) the articles of copartnership or association, and all other papers pertaining to its organization, if the securities be insured or guaranteed by a copartnership or unincorporated association; (11) a copy of its charter and bylaws if the securities be issued or guaranteed by a corporation; (12) a filing fee of twenty-five ($25) dollars."

The terms "securities" and "speculative securities" are defined by the act as follows: "The term 'securities' as used in this act shall be taken to mean stock certificates, shares, bonds, debentures, certificates of participation, contracts, contracts or bonds for the sale and conveyance of land on deferred payments or instalment plan, or other instruments in the nature thereof by whatsoever name known or called. The term 'speculative securities' as used in this act shall be taken to mean and include: (1) All securities into the specified par value of which the element of chance, speculative profit, or possible loss equal or predominate over the elements of reasonable certainty, safety, and investment; (2) all securities the value of which materially depends on proposed or promised future promotion or development rather than on present tangible assets and conditions; (3) any securities based in whole or material part on assets consisting of patents, formulæ, good will, promotion, or intangible assets; (4) securities made or issued in furtherance or promotion of any enterprise or scheme for the sale of unimproved or undeveloped land on any deferred payments or instalment plan when the principal value of such securities depends on the future performance of any stipulation by the promoters of such enterprise to furnish irrigation or transportation facilities, or other value enhancing utility or improvement." Violation of the statute is made a crime, punishable by fine or imprisonment, or both.

The criminal complaint in this case charges that the petitioner did wilfully, unlawfully, and feloniously, and without first having complied with the provisions of said law, sell "an agreement for buyers' certificates of the Lignite Consumers Mining Company of North Dakota" to one Christ Olson; that the said agreement is in reality a share and a speculative security. The certificate is set forth in the complaint *in hæc verba.* It provided in substance that in consideration of the sum of $100, to be paid in cash or note to the Lignite Consumers Mining Company, a corporation to be formed under the laws of this state not

later than October 1, 1919, the said mining company agrees to utilize 90 per cent of all the moneys secured to establish a mine at or near Havelock, North Dakota, until the sum of $200,000 shall be so applied; and that all surplus subscribed over said sum may be used either to maintain a mine or other mines within this state, or to carry on educational work or experiments with the lignite coal, or its by-products; that the Lignite Consumers Mining Company agrees to establish its mine at or near Havelock, North Dakota, not later than October 1, 1919, or as soon thereafter as is possible; and that it will immediately thereafter issue to each member or signer of the agreement, a certificate granting him or it the right to purchase lignite coal at said mine or any other mine or mines said company may establish at a price not to exceed $1.50 per ton, or as much lower as the board of directors may deem advisable to sell coal per ton.

It is further alleged in the criminal complaint that there had been no compliance whatever with the provisions of said chapter 91, Laws 1915, at, or prior to, the time the said defendant, Claude Rossen, made said sale to said Christ Olson.

The relator claims that he is unlawfully in custody; that the commitment under which he is held is void for the reason that the facts set forth in the complaint do not constitute a violation of the statute. It is contended that the contract or agreement which the defendant sold is not a "speculative security," within the terms of the act. In our opinion the contention is wholly untenable. The statute expressly declares that the term "speculative securities" as used therein shall be taken to mean all stock certificates, shares, bonds, debentures, certificates of participation, contracts, contracts or bonds for the sale and conveyance of land on deferred payments or instalment plan, or other instruments in this nature by whatsoever name known or called, into the par value of which the element of chance, speculative profit, or possible loss equal or predominate over the elements of reasonable certainty, safety, and investment; or the value of which materially depends on proposed or promised future promotion or development rather than on present tangible assets and conditions.

The certificate which the relator sold for $100 is to be issued in the future. It is to be issued by a corporation to be organized in the future. The mines from which coal is to be sold are to be developed in the

future.   It seems too clear for argument that the transaction falls squarely within the terms of the statute.   The value of the certificate which the relator sold is manifestly dependent upon the future promotion and development of the mines.   It also seems entirely clear that reasonable men would be entirely justified in finding that the element of chance, speculative profit, or possible loss, equal or predominate over the elements of certainty, safety, and investment.

The writ prayed for is denied.

GRACE, J.   I concur in the result.

BRONSON, J., being disqualified, did not participate.