Argued January 4, reversed January 31, rehearing denied March 6, 1928.

## C. J. PENNICARD *v.* U. C. COE.

### (263 Pac. 920.)

Licenses—Sale of Certificates, Transferring Units in Syndicate, Held Within Provisions of Blue Sky Law (Blue Sky Law. as Amended by Laws 1921, p. 790; Or. L., § 6848).

1. Sale of certificates, transferring units of interest in syndicate, entitling holder to participate in all profits earned by syndicate and sold by defendant as trustee, *held* within provisions of Blue Sky Law. as amended by Laws of 1921, page 790, and Section 6848, Or. L.

Sales—Acts Claimed to Constitute Ratification of Sale Which Otherwise Might have Been Rescinded must be Performed With Intention of Ratifying Sale, or of Such Nature That Purpose to Ratify may be Unmistakably Inferred.

2. Acts or declarations, claimed to constitute ratification of sale which otherwise might .have been rescinded, must be shown to have been given or performed with the intention of ratifying it, or they must be of such nature or tenure that purpose to ratify may be unmistakably inferred.

Contracts—Generally, Contract Made in Violation of Statute is Void, Notwithstanding Penalty Attached.

3. General rule of law is that contract made in violation of statute is void, notwithstanding penalty attached.

Licenses—Sale of Certificates Transferring Units in Syndicate, in Violation of Blue Sky Law, was Void and Buyer Could Rescind Contract and Recover Sum Paid (Blue Sky Law, as Amended by Laws 1921, p. 790; Or. L., § 6848).

4. Contract of sale of certificates, transferring units of interest in syndicate, in violation of Blue Sky Law, as amended by Laws

---

1. Blue Sky Laws, see notes in Ann. Cas. 1916A, 706; Ann. Cas. 1917C, 650; L. R. A. 1917F, 524; 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014.

3. Validity of contracts in violation of statute; see notes in 1 Ann. Cas. 333; 11 Ann. Cas. 664. See, also, 6 R. C. L. 699, 702.

4. Validity of sale in violation of Blue Sky Laws, see note in 30 A. L. R. 1340. See, also, 17 R. C. L. 559.

of 1921, page 790, was void, notwithstanding penalty attached under Section 6848, Or. L., and buyer could rescind contract and recover sum paid.

Contracts, 13 **C. J.**, p. 421, n. 81, p. 424, n. 11, p. 506, n. 82, p. 625, n. 8 New.
    Licenses, 37 **C. J.**, p. 275, n. 13, p. 277, n. 43.

From Multnomah: Louis P. Hewitt, Judge.

Department 2.

This is a suit for the rescission of a contract for the sale and purchase of certain securities, founded upon the alleged false and fraudulent representations made by the defendant through his agents, and the alleged violation of the provisions of the Blue Sky Law of this state. From a judgment dismissing the suit, plaintiff appeals.        Reversed. Rehearing Denied.

For appellant there was a brief and oral argument by *Mr. Thomas Mannix.*

For respondent there was a brief over the names of *Mr. W. Lair Thompson* and *Mr. Ralph H. King,* with an oral argument by *Mr. King.*

BROWN, J.—On May 12, 1922, U. C. Coe, defendant herein, executed an agreement and declaration of trust in the City of Great Falls, Cascade County, Montana, and on June 20th of that year caused the same to be recorded in the office of the county recorder of that county. The objects of the agreement are stated in the following language:

"Establishing a trust estate and defining the interest, rights and duties of the holders from time to time of beneficial interests or units to be issued hereunder, together with their assigns hereinafter called subscribers or beneficiaries, and themselves, to-

gether with their successors hereinafter called trustees, WITNESSETH:

"THAT WHEREAS, the said U. C. Coe, ——, ——, for the following purposes, to-wit:

"(a) To locate, purchase, lease and acquire lands, mineral claims, and rights to prospect for, bore, sink, wells and shafts, produce, pipe, convey and transport, oil, petroleum, gas and minerals of any kind and description.

"(b) To carry on the business of searching and prospecting for, mining, producing, refining, manufacturing, piping, storing, transporting, buying and selling natural gas, petroleum and other oils and their products and by-products; to buy, sell and market the same, and to contract for the sale and the distribution thereof.

"(c) To bore, build, construct, pump, operate and maintain oil and gas wells. * *

"(d) To acquire, own, develop, operate, sell and dispose of mines of coal * * .

"(e) To manufacture * * tools and conveniences for use in connection with mining or drilling for oil, gas, minerals, and other products. * *

"(o) To carry on any other business or do anything in connection with the objects and purposes above mentioned that may be necessary or proper to accomplish successfully or promote the said objects and purposes herein set forth. The foregoing clause, by reason of the specific enumeration of powers, shall not be held to restrict the power to do any of the things within the purview of its general powers.

"AND WHEREAS, the said U. C. Coe, Tom Taylor and H. H. McGovern (a line being drawn through the names with the typewriter), as Trustee under the designation of Coe Drilling Company, a common-law trust, purpose to issue negotiable beneficial interests or units in the form of certificates to the extent of fifteen thousand (15,000) shares of the expressed value of Five Dollars ($5.00) each, in the beneficial interest of the trust estate hereby created; it being hereby provided that said shares may be

issued unto the subscribers either for cash or by sale and conveyance by them unto the trustees of real and personal property, contracts, services rendered, or other valuable rights and things for the uses, purposes and benefit of this trust, and thereby become and be fully paid-up and non-assessable; which shares shall define the interest of the subscribers and their assigns in such property; which property shall be detailed and described in schedule 'A' on the books of the trustee, and the judgment of the trustee regarding the value of the property acquired or service rendered shall be conclusive.

"Now, THEREFORE, the said U. C. Coe, ——, ——, as trustee, hereby declare that they will hold said property to be conveyed unto him, as well as all other property they may afterwards acquire as trustee, together with the proceeds and profits thereof, in trust; that he will engage such property and funds to such business pursuits as he shall deem most advantageous to his trust; to manage, control, operate, and dispose of the same in any part of the world for the benefit of the holders from time to time of certificates for units issued hereunder in the manner and subject to the stipulations herein contained, to-wit:

"First.

"(a) The legal title of the trustee shall be the 'Trustee of the Coe Drilling Company, a Common-Law Trust'; and all property so designated shall be construed as belonging to the trust.

"(b) In executing all instruments in writing, the trustees shall sign, 'Coe Drilling Company, a Common-Law Trust,' and thereunder sign his own name, either above or below the word 'Trustee.'

"Second.

"(a) The trustee shall hold the legal title to all property at any time belonging to the trust, and shall have and exercise the exclusive management and control of the same; he shall assume all contracts, obligations and liabilities in connection with or growing out of the property conveyed unto him, and the management of the same in the business of this trust as here-

inbefore specified, and to the extent and value of such property, but not personally; shall agree to hold the subscribers and their assigns, and any person associated or acting with him, harmless and indemnified from and against any loss, cost, obligation or liability, by reason of or in connection with such contract, obligation or liability; * * he may sue for, receive and receipt for all moneys at any time coming due to his trust; * * he may purchase, lease, option, contract for, locate or otherwise acquire, own, hold, improve, operate, lease, * * grant, mortgage, pledge, hypothecate, redeem, sell, or otherwise deal in and dispose of such real and personal property as he shall deem most advantageous to his trust; * * he may accept and extend credit, borrow and loan money, issue notes, bonds, debentures, certificates of interest or other evidences of indebtedness, and may secure the payment thereof by mortgage, pledge of property, deed of trust, or otherwise; * * and, in general, may do and perform such other acts and things, and transact such other business, not inconsistent with the terms of this instrument or general law, either alone or in conjunction with others, as he from time to time may deem best for the benefit of his trust. * *

"Third.

"(a) U. C. Coe, ——, ——, shall be the trustee hereunder, and shall hold his office during the continuance of this trust * * .

"(b) As compensation for marketing the units to be issued hereunder for benefit of this trust, U. C. Coe personally shall be entitled to receive a cash commission of —— per cent of the expressed value of the units by him disposed of, in which negotiation he shall have the right to employ brokers, agents, underwriters, salesmen, or others to assist him in marketing said units, and to pay them their compensation as he sees fit for their services.

"(c) As compensation for administering the affairs of the trust estate, Trustee U. C. Coe shall be entitled to receive a salary of —— Dollars per month. * *

"Fourth.

"(a) The trustee may make * * rules and regulations * * for the government of himself, his agents, employees or representatives.

"(b) The trustee may employ, engage, hire, appoint and discharge such skilled and common labor, agents, salesmen, * * assistants and representatives . as he may from time to time deem necessary * * .

"(c) The trustees shall not be liable for error of judgment in * * operating or disposing of any property for the benefit of his trusts. * *

"Fifth.

"(a) Units or beneficial interests hereunder shall be expressed of the value of Five Dollars ($5.00) each. In the event of liquidation of the assets of the trust estate, the proceeds of such liquidation shall first be applied to redeeming the units or beneficial interests at their expressed value. * *

"(b) As evidence of ownership of such units or beneficial interests, the trustee shall issue or cause to be issued unto each subscriber or assigns a negotiable certificate or certificates, in which shall be specified the number of units or beneficial interests by them owned. * *

"Sixth. * *

"(b) The ownership of units or beneficial interests issued hereunder shall not entitle the holder thereof to any individual title to the trust estate whatsoever, or the right to call for a partition or division thereof, or for an accounting, or any voice or control whatsoever of the trust property, or the management thereof, or the business connected therewith by the trustee.

"Seventh. * *

"(b) In every written order * * which the trustee shall give or enter into, it shall be his duty to stipulate therein that neither the subscribers nor the trustee shall be held to any personal liability * * .

"Eighth.

" * * The duration of this trust shall in no event continue for a period of time extending beyond

twenty-one (21) years from date of the death of the said trustee.''

The body of the instrument shows that U. C. Coe, Tom Taylor and H. H. McGovern were named therein as trustees; but the names of Taylor and McGovern appear to have been erased therefrom. Furthermore, the instrument apparently was never executed by either Taylor or McGovern.

Pursuant to the provisions of the above declaration of trust, the defendant issued and delivered to plaintiff certificates for 230 units, and received in payment therefor the sum of $900. The first certificate thus issued and delivered reads as follows:

"No. 3.                                    Units, 20.

"THE COE DRILLING SYNDICATE,
"Great Falls, Montana.

"Fully paid.                    Undivided interest.

"THIS CERTIFIES, That C. J. Pennicard is the owner of twenty units in THE COE DRILLING SYNDICATE, a holding syndicate, with its principal offices at Great Falls, Montana, and Portland, Oregon.

"The holdings of this Syndicate consist of oil and gas leases in Toole County, Montana, covering one thousand (1,000) acres. Each unit holder owns an undivided interest in every part of the holdings of the Syndicate, and is entitled to participate in any and all profits which may be earned by the Syndicate from whatever source.

"The exclusive management of the Syndicate is vested in a board of trustees, selected in the manner set forth in the Articles of Agreement of The Coe Drilling Syndicate now on file in the records of Toole County, Montana, and the trust undertaken by such board of trustees is governed by the terms of such agreement and limited thereto.

"This certificate and the authorized printed matter of the Syndicate constitute the only representations as to the value and merit of the holdings of the Syndi-

cate which will be recognized. Representations other than these, if any, are hereby expressly repudiated.

"This certificate is transferable only by assignment and transfer on the books of the Registrar. A charge of One Dollar shall be made by the Registrar for such transfer upon its books and the issuance of a new certificate. Dividends and earnings being payable to the holder of record. The trustee shall not be liable for any error in the payments of such dividends and earnings to record owners, when a record transfer of interest shall not have been requested by any assignee.

"Dated at Portland, Oregon, this 27th day of June, 1922.

"THE COE DRILLING SYNDICATE.
"U. C. COE,
"Trustee.
"Units $5.00 each."

Excepting as to number and amount, the subsequent certificates were identical with the certificate above set out.

1. Are the above-described contracts void under the provisions of the Blue Sky Law of Oregon? After a careful reading of the record, we are convinced that this is the fundamental question involved in this cause. The plaintiff contends that the units purchased by him were sold by the defendant in violation of the provisions of the Oregon Blue Sky Law. On the other hand, the defendant asserts that the securities sold by him are not controlled by that law, and cites in support thereof the case of *Superior Oil Syndicate* v. *Handley,* 99 Or. 146 (195 Pac. 159), decided February 1, 1921. That decision was rendered prior to the amendment of the Blue Sky Law by Chapter 400, General Laws of Oregon, 1921, which defines the term "dealer" within the meaning of that law as follows:

"The word 'dealer,' within the meaning of this act, shall include every person, partnership, corporation or association which is now engaged, or which shall hereafter engage, in the selling or in the buying for the purpose or in the contemplation of selling, (of) any stock, stock certificates, bonds, debentures, notes, contracts, membership certificates, or securities of whatsoever kind or character, all hereinafter termed 'securities'; provided, that any purchase for investment of any security or securities, or any sale of such security or securities previously held by the vendor thereof as or for an investment, by any person, partnership, corporation or association, or any sale, transfer or negotiation of such security or securities by the *bona fide* owner thereof, or by any agent exclusively for such owners, such sale, transfer or negotiation not being in the course of repeated or continuing transactions of a similar nature, shall not constitute the purchaser or vendor of such security or securities so purchased or sold a dealer within the meaning of this act; and provided further, that any person, partnership, domestic corporation, foreign corporation doing business within this state, or association which shall hereafter offer its own securities for sale to the public shall be considered a dealer within the meaning of this act."

In the later case of *State* v. *Whiteaker,* 118 Or. 656 (247 Pac. 1077), this court held that instruments reciting payment for "units of interest" in a copartnership were embraced within the provisions of the Blue Sky Law prohibiting the sale of "securities" without a license. In that case the certificates recited that one Harrison Whiteaker, having made a valuable mineral discovery, was desirous of obtaining financial assistance, and that the prosecuting witness, being willing to assist Whiteaker, paid him the sum of $200, "the receipt of which is hereby acknowledged, and shall receive therefor two units of interest in a

copartnership for the development of said project, ** the total number of units of interest being 2,000 or less, in the discretion and judgment of said W. Harrison Whiteaker." The certificate further provided that defendant Whiteaker should be the general manager of the copartnership and have full charge and direct the general policy of the proposed business. It was there held that it was the intention of the legislature to use the term "securities" in a broad sense.

The term "security" is defined by the Corporate Securities Act of the State of California (Stats. 1917, p. 673), as follows:

"Any instrument issued or offered to the public by any company, evidencing or representing any right to participate or share in the profits or earnings or the distribution of assets of any business carried on for profit." Section 2, subd. 6 (c).

This definition is set out and followed in the case of *People* v. *McCalla*, 63 Cal. App. 783 (220 Pac. 436).

The case of *State* v. *Gopher Tire & Rubber Co.*, 146 Minn. 52 (177 N. W. 937), seems to be directly in point. In its disposition of that case the Minnesota court rendered an exhaustive opinion, in part as follows:

"If defendant issued and sold its certificates to purchasers who paid their money, justly expecting to receive an income or profit from the investment, it would seem that the statute (Blue Sky Law) should apply. The statute makes specific mention of stock, which, properly speaking, is not a security, and follows the enumeration of investments which fall within its scope with the words, 'herein called securities,' indicating that the Legislature has not used the term 'securities' in a literal, but in a broad, sense. In that sense, these certificates may properly be regarded

as investment contracts or securities. The mere fact that defendant has studiously declared that they are not does not require a court to hold that they are something else.''

To similar effect are *State ex rel. Rossen* v. *Welch,* 42 N. D. 44 (172 N. W. 234); *State* v. *Hudson,* 214 Mo. App. 260 (259 S. W. 877); *Ex parte Girard,* 186 Cal. 718 (200 Pac. 593); *Agnew* v. *Daugherty,* 189 Cal. 446 (209 Pac. 34); *People* v. *McCalla,* 63 Cal. App. 783 (220 Pac. 436); *State* v. *Evans,* 154 Minn. 95 (191 N. W. 425, 27 A. L. R. 1165); *State* v. *Ogden,* 154 Minn. 425 (191 N. W. 916); *Groby* v. *State,* 109 Ohio, 543 (143 N. E. 126).

Section 6848, Or. Laws, denounces as a felony the sale of securities such as those hereinbefore described, without first complying with the terms of the Blue Sky Law.

2. The defendant asserts that the plaintiff ratified the sale of the securities with knowledge of the alleged fraud, and that for that reason he cannot rescind. There is no testimony in the record that tends to show that the plaintiff committed any act intended to ratify the unlawful acts of the defendant. On the subject of ratification, 2 Black on Rescission and Cancellation says, at Section 611:

''Any acts or declarations alleged as constituting a ratification of a deed or contract which otherwise might have been rescinded must be shown to have been given or performed with the intention of ratifying it, or they must be of such a nature or tenor that a purpose to ratify may be unmistakably inferred.''

This is an established rule of law.

3 Williston on Contracts, Section 1764, note 70, reads:

124 Or.—28

"A contract founded on a statute making an act penal is void, although the statute does not expressly pronounce it void or expressly prohibit it."

In this connection, note the following from 13 C. J., "Contracts," Section 356:

"If an act is prohibited by statute, an agreement in violation of the statute is void, although the act is not penalized, for it is the prohibition, and not the penalty, which makes the act illegal."

In 2 Elliott on Contracts, Section 686, the author, treating of the effect of ratification, holds, in effect, that a contract which is unlawful under existing laws cannot be ratified. The same author, at Section 1089, says:

"It is a general rule of law that a contract made in violation of a statute is void, and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract he cannot recover. Consequently, a contract which is in reality illegal cannot, properly speaking, be ratified."

3. The defendant contends that, because the Blue Sky Law does not expressly provide that a sale made contrary to its provisions is illegal and void, this court must hold that the penalty prescribed by the terms of the statute itself is the only penalty for such sale. Though there are authorities in support of the defendant's position, the great weight of authority is to the contrary. The general rule of law is that a contract made in violation of a statute is void, notwithstanding the penalty attached. This is especially true with respect to statutes such as the Blue Sky Law, which was enacted under the police power of the state, with the design and purpose to protect the general public from "wild cat" organizers, promoters and their agents who prey upon an unsuspecting public by

selling "Blue Sky" securities without a license therefor.

In discussing the subject of nonpayment of license fees as vitiating contracts, the editors of Ruling Case Law have written:

"It seems to be a general doctrine now well settled by the authorities that when the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is void." 17 R. C. L., "Licenses," § 73.

Concerning the general question as to whether or not failure to procure a license under the Blue Sky Law renders a contract invalid or unenforceable, see, also, annotations in 15 A. L. R. 262, 24 A. L. R. 523, and the exhaustive annotation on the subject generally in 30 A. L. R., commencing at page 834.

4. There are allegations in the complaint, and assertions in the brief, of fraudulent representations on the part of the defendant; but this is not established by the evidence. The defendant seems to have been a victim of an unscrupulous agent. However, the securities issued by the defendant as trustee were sold by his authority, in violation of the Blue Sky Law, and the contract of sale is void. It follows that the plaintiff was within his right in maintaining this suit.

The decree appealed from will be set aside, and one entered here granting to the plaintiff a rescission of

the contracts involved, and restoring to him the sum of $900 paid by him to defendant.

Neither party will recover costs.

REVERSED AND DECREE ENTERED.    REHEARING DENIED.

RAND, C. J., and BEAN and BELT, JJ., concur.