## Hampton Realty Company v. Middleton, Securities Commissioner.

(Decided June 17, 1927.)

### Appeal from Franklin Circuit Court.

1. Statutes.—Acts 1926, c. 76, entitled "An act to prevent fraud, deceit, or imposition in the sale . . . of contracts, stocks, bonds, (etc.) . . . sold or offered for sale . . . by any person; . . . authorizing the inspection of and such regulation and supervision of the business of any person (etc.) . . . as may be necessary to prevent fraud, deceit or imposition, . . ." which in sections 7 and 9 authorizes securities commissioner to reject or revoke license because business of security issuer is not based on sound business principles, held not violative of Constitution, section 51, providing that no law shall embrace more than one subject expressed in its title.

2. Licenses.—Acts 1926, c. 76, sections 7, 9, authorizing security commissioner to reject or revoke license on ground that business of security issuer is not based on sound business principles, held not to confer on commissioner arbitrary power in permitting or refusing registration of proposed securities, in view of right of appeal.

3. Licenses.—Evidence showing that owners of property on which apartment building was to be constructed with proceeds of bonds, registration of which was sought, were to take out for own services approximately 20 per cent. of the sale price, and that liens on the property when so improved would be approximately equal to its actual value, held to show that enterprise was not based on sound business principles as affecting right to registration of securities.

ELI H. BROWN, JR., JOHN M. SCOTT and WM. B. THOMAS for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

Appellee is the securities commissioner authorized by the act of the General Assembly of 1926, c. 76, p. 210.

The appellant, Hampton Realty Company, is a corporation having nominal title to a tract of land in Louisville, upon which there has already been erected an apartment house known as unit A, and upon which it is proposed ultimately to erect two other units known as unit B and unit C, the whole to be operated as one apartment house. Practically the whole of the stock, however, in that corporation is owned and controlled by Johnson-Ouerbacker Company, a brokers' corporation doing business in Louisville.

Appellant, desiring to finance the erection of unit C, made application to the appellee commissioner for the registration of certain bonds and debentures it desired to sell to the public secured by a deed of trust on said proposed unit C.

After a full investigation by the commissioner in person, and after an exhaustive examination of the business of appellant and the associated corporation of Johnson-Ouerbacker Company, which, as recited, owns the capital stock of appellant company, by a firm of expert accountants selected by the commissioner, and after receiving from such accountants a full report, the commissioner declined in writing to register the securities proposed to be so sold.

Acting under authority of the act under which the commissioner was appointed (Acts of 1926, c. 76, p. 210), the applicant appealed to the Franklin circuit court from such action of the commissioner, and that court declined by its judgment to interfere with the discretion so exercised by the commissioner, and upheld the validity of the act under which the commissioner assumed to deny appellant such privilege, and from that action of the circuit court this appeal is taken.

The facts are that appellant has title to an apartment house containing 63 apartments situated at or about Second and York streets in Louisville, Ky., and known as unit A; that it likewise has similar title to an adjoining tract of land upon which it is proposed ultimately to erect units B and C, similar apartment houses to be eventually operated as one apartment. What is now proposed is to erect unit C on a part of this adjoin-

ing property, and it is purposed to erect and equip unit C with the proceeds of the sale of the said bonds and debentures, and incidentally to take up a part of the indebtedness on unit A already erected.

The existing indebtedness on unit A consists of $120,000 first mortgage, $21,000 in mortgage notes, and a $22,000 second mortgage, together with some accrued interest. It is proposed to incumber unit C when erected with a debt of $310,000, the first mortgage bonds of $160,000 to be sold at 90 cents on the dollar, and the $150,000 of debentures to be sold at 85 cents on the dollar, so that the aggregate issue when disposed of would produce $271,500. The sale of these bonds and debentures is to be made by the Johnson-Ouerbacker Company, which, as we have seen, is the real owner of the property at Second and York streets, under a contract with the appellant whereby the Johnson-Ouerbacker Company is to receive a 15 per cent. commission on the total sales; but whether this commission is to be on the par value of the securities or on the sale price is not clearly disclosed. In addition to that the president of appellant company, who is an architect, is to receive an architect's fee of something more than $12,000. In other words, the real owners of this property and the architect who is president of the nominal title holder are to receive out of the sale price of the proposed securities something over $50,000 in fees and commissions for raising the money and preparing the plans for a proposed building on their own property.

The commissioner, in giving his reasons for declining to register the securities, fixed the total value of the whole property at Second and York at something over $480,000, and, in doing so, as to unit A and the vacant real estate, accepted the highest valuations furnished by the appellee, and added to those valuations the cost price of the proposed unit C as shown by the builders' contract. He then recites that the total liens, after the sale of these bonds and debentures, as proposed, would be $473,000, or approximately the estimated value of the whole property, accepting the highest appraisals furnished by the applicant.

The commissioner then bases his refusal to permit the securities to be registered upon his opinion that the business is not based upon sound business principles.

The grounds for reversal are:

(1)   That the title to the act under which appellee gets his authority is not sufficiently comprehensive to confer the power upon him to reject or revoke licenses, because the business of the security issuer is not in his opinion based upon sound business principles.

(2)   That such enactments involve an exercise of the police power of the state, and can only be sustained when enacted to protect the public health, the public morals, or the public safety; and that the effort to lodge in the commissioner the right to pass upon the soundness or unsoundness of business principles has no relation to these things.

(3)   That the record shows appellant's business is based upon sound business principles.

The title to the act, so far as is necessary to elucidate the question, is

"An act to prevent fraud, deceit, or imposition in the sale or disposition of (contracts, stocks, bonds, or written evidence of debt, certificates showing present or future interest in any property or business enterprise or venture, or other securities) sold or offered for sale within the commonwealth of Kentucky by any person, (persons, partnership, company, association, trust or corporation, foreign or domestic;) authorizing the inspection of and such regulation and supervision of the business of any person, (persons, firms, partnerships, companies, associations, trust or corporations engaged in the business or any part thereof described in this act) as may be necessary to prevent fraud, deceit, or imposition in the sale or offer for sale within this commonwealth of any contracts, stocks, bonds, written evidence of debt, or of (certificates showing) present or future interest in any property, business enterprise or venture, or other securities mentioned in this act."

Section 7 of the act, among other things, provides:

"If upon examination of any application the commissioner shall find that the sale of security referred to therein would not be fraudulent or deceitful or would not work or tend to work a fraud or imposition upon the purchaser, or that the enterprise or business of the issuer is not based upon unsound

business principles, then upon the payment of the fee provided in this section, he shall record the registration of such security.''

Then in section 9 the act provides:

''The commissioner may revoke the registration of any security by entering an order to that effect, with his findings in respect thereto, if upon examination into the affairs of the issuer of such security it shall appear . . . that the enterprise or business of the issuer is not based upon sound business principles.''

Section 51 of our Constitution provides that no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and it is urged for appellant that the authority so attempted to be conferred upon the commissioner to pass upon the soundness or unsoundness of the business principles followed and adopted by the proposed insurer of the securities is not fairly embraced in the title to the act, and that therefore such provisions in sections 7 and 9 quoted are void, and the action of the commissioner in basing his finding upon such authority was invalid, and exercised without authority of law.

The basic purpose in the enactment of this and all similar laws is to protect the unwary public from investing their money in either fraudulent or unsound securities put upon the market either by designedly fraudulent promoters and schemers, or by such persons as may in good faith offer securities to the public upon their own visionary belief that they are in fact sound, and that the proposed venture will ultimately succeed. An inspection of the title to the act and the provisions of the act discloses a purpose, not only to protect the public from fraud and deceit designedly conceived, but from resultant loss which may come to the unwary investor because of the mistaken view of the promoter that the securities offered are sound and secured by sufficient real value. The loss to the investor is as great in the one case as the other, and, so far as the outcome of his investment is concerned, it matters not to him whether the promoter purposely sold him a worthless security or whether he in the pursuit of an honest or mistaken purpose sold him such security.

The "fraud, deceit, or imposition" referred to both in the title and in the body of the act are very comprehensive terms; "fraud and deceit" doubtless comprehended actually fraudulent and deceitful conduct by those issuing the security, but the word "imposition" in its ordinary acceptation does not necessarily comprehend either actually fraudulent or deceitful conduct, but contemplates that one may be imposed upon and induced to invest in a security either because the thing back of the security is not of the value fixed upon it by the issuer or because the business as conducted by, and proposed to be conducted by, the issuer is not based upon sound business principles.

Giving to those words used in the title their commonly accepted meaning, and giving to the quoted provisions of sections 7 and 9 their obvious meaning, it is not to be doubted that the General Assembly intended to confer upon the commissioner the duty, after vigilant investigation, to determine whether the security so offered to the public was based upon a business conducted by the insurer upon sound business principles. The title to the act expressly contemplates and authorizes the inspection, regulation, and supervision of the business of any person proposing to issue such securities, and the complained of provisions in sections 7 and 9 are plainly pursuant to the authority expressed in the title to inspect, regulate, and supervise such business. Of what value could it be to a proposed investor that the securities commissioner had the right and power to inspect, regulate, and supervise the business of the issuer if upon such inspection he found the security based upon unsound business principles, and yet had no power or authority to prevent the registration of the security? The fact that the title contemplates conferring upon the commissioner the power to inspect, regulate, and supervise necessarily suggests that the commissioner will in the act be empowered to take such action as he may deem proper after such inspection. The title contemplates, not only the right to inspect the business, which is to look into and investigate it, but to regulate and supervise, and each of those words contemplates that the act will confer upon the commissioner some power of regulation and supervision to the end that the fundamental purpose of the enactment may be carried out, and the unwary public protected from investing in unsound securities.

We have found no difficulty in reaching the conclusion that the title to the act is sufficient to embrace the

authority conferred upon the commissioner by the quoted parts of sections 7 and 9.

Nor are we impressed with the argument that the act confers upon the commissioner abritrary power in permitting or refusing the registration of proposed securities. Upon its face the act provides for an appeal to the courts of this commonwealth from the action of the commissioner in such matters, and the proposed issuer in this case is by his action in appealing to the circuit court, and from that court to this, demonstrating that there is in fact no such arbitrary power conferred upon or attempted to be conferred upon the commissioner. If in any case the commissioner should arbitrarily, capriciously, or with apparent lack of reason refuse to register the securities of a proposed issuer, his acts under the law would be subject to revision by the courts, which guarantees to such issuer the utmost protection of the law.

It may be true that the granting to an administrative official the power to say that one's business is not conducted upon sound business principles, and that therefore he will not be permitted to register certain securities he desires to offer for sale, is a broad and comprehensive power, but, when the exercise of that authority is duly restricted and hedged about by the granting of a right to appeal to the courts, the danger is not so apparent.

Lastly, it is said that the facts disclosed in the record show appellant's business to be based upon sound business principles. Without going into detail, the recited facts above not only disclose that the indebtedness of appellant as proposed would practically represent the value of its whole assets, but it is disclosed that the real owners of this property, mortgaged to secure these securities, propose to take out of the proceeds of their sale approximately 20 per cent. of the sale price, and expend only the remaining 80 per cent. upon the property which is offered as security to the investor. Not only so, the average safe business man would naturally hesitate to invest in a security protected by property of approximately the same value as the existing lien debts upon it.

The commissioner, in the exercise of the authority conferred upon him by law, and after a careful investigation himself, together with expert investigation by trained accountants, has determined that his duty to the investing public requires him to refuse the registration of these certificates; and, while there is some contention as to the values and the amount of incidentals, and

the application of the proposed funds to certain purposes, an inspection of the whole record fails to furnish any sound reason why the courts should interfere with the exercise of this discretion by the commissioner, manifestly conscientiously done after a patient investigation.

Judgment affirmed.