HERBERT A. KNEELAND *vs.* ALBERT EMERTON.

Suffolk.    January 6, 1932. — October 25, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & FIELD, JJ.

*Contract*, Validity, Sale of securities. *Sale*, Validity, Of securities. *Sale of Securities Act. Corporation*, Sale of stock. *Statute*, Construction. *Waiver. Laches. Constitutional Law*, Due process of law. *Words*, "Owner," "Repeated and successive transactions," "Transactions," "Isolated," "Reasonable time," "Like character."

It is permissible to examine the history of a statute in ascertaining the intent of the General Court as disclosed by the words of the statute.

The terms of a statute must be interpreted and construed so as to effectuate the purpose of the General Court ascertained from the several parts of the statute and the meaning fairly attributable to all its words considered in connection with the causes leading to its enactment, the subject to which it is applicable, the preëxisting state of the common and statutory law, the mischief to be remedied, and the main object to be accomplished, to the end that it be given an effect in harmony with common sense and sound reason. Per RUGG, C.J.

A fully executed contract for the sale of shares of corporate stock to one in ignorance of the fact that the sale violated G. L. (Ter. Ed.) c. 110A, § 5, in that previous thereto there had not been filed with the commission of the department of public utilities the notice required by said section, properly was declared void in an action brought by the purchaser to recover the price he had paid in the transaction.

Statements, in an agreed statement of facts in such an action that, shortly after the sale had been completed, such notice was filed and "the stock was qualified by the department of public utilities," were sufficient to show that the stock was of a kind requiring the action specified by §§ 5, 6, of said c. 110A, and was not one of the kinds described in the exceptions created by § 3.

It appearing, in the action above described, that the defendant, the seller of the shares, was a duly registered broker engaged in a brokerage business; that, after the plaintiff had ordered the shares of the defendant through an agent, the defendant immediately purchased them and sold them to the plaintiff; that the defendant "Some time prior" had made another sale of the same stock; and that the defendant was not an underwriter of the stock, it was *held,* that

. (1) The sale to the plaintiff was not an isolated sale within the exception specified by § 3 (a) of said c. 110A;

(2) There was no merit in a contention by the defendant that the requirement of said § 5 as to the filing of the notice was inapplicable to the transaction in question, in that the defendant had not offered the shares for sale to the plaintiff but had sold them to him upon his solicitation.

It further appearing in the action above described that the plaintiff had no actual knowledge, until nearly two years after the sale to him, that said notice had not been filed with the commission previous to the sale; and that, within a few days after acquiring such knowledge, he made a tender of the shares to the defendant and demanded a return of the purchase price, which was refused, and commenced the action, it was *held,* that

(1) The plaintiff in the circumstances was not chargeable to his harm with constructive knowledge of the fact that the defendant had not complied with the statute: he had a right to assume that the defendant was not violating the law;

(2) There was nothing to show that the plaintiff had waived his rights under the statute or that he had been guilty of laches in enforcing them.

In determining the constitutionality of a statute, regard must be had to the settled underlying principle that all rational presumptions are to be made in favor of its validity; it will not be declared unconstitutional unless its conflict with the Constitution is established beyond reasonable doubt and unless it cannot reasonably be construed in harmony therewith.

Section 3 (a) of G. L. (Ter. Ed.) c. 110A is not so vague and indefinite as to make said c. 110A violative of art. 12 of the Declaration of Rights of the Constitution of this Commonwealth nor the due process of law clause of art. 14 of the Amendments to the Constitution of the United States.

CONTRACT. Writ in the Municipal Court of the City of Boston dated January 20, 1931.

The action was heard in the Municipal Court by *Zottoli*, J., upon an agreed statement of facts. The plaintiff's declaration and material facts are described in the opinion.

The defendant requested the following rulings of law:

"1. Upon all the evidence the plaintiff cannot recover in this action.

"2. The sale by the defendant to the plaintiff of the one hundred shares of Shoe Lace Company, Ltd., was a valid sale.

"3. The plaintiff is chargeable with constructive notice of the fact that the defendant at the time of the sale in question had not filed with the department of public utilities a notice of intention to offer for sale stock of the Shoe Lace Company, Ltd.

"4. St. 1921, c. 499, as amended, is a penal statute only and does not affect the civil rights or obligations of the parties to this action so far as the transaction in question is concerned.

"5. If there has been no failure of consideration the plaintiff cannot recover in this action.

"6. The requirements of St. 1921, c. 499, as amended, requiring a broker to file an intention to offer for sale stock, has no application to the transaction here in question."

The judge refused to rule as requested, and made the following finding: "I find this sale was void; it being in contravention of the 'Sale of Securities' Act." He then found for the plaintiff in the sum of $1,500 plus interest and reported the action to the Appellate Division. The Appellate Division ordered the finding for the plaintiff vacated and judgment entered for the defendant. The plaintiff appealed.

*S. R. Jones,* (*J. B. Jacobs* with him,) for the plaintiff.

*B. L. Young,* (*E. J. Owens & O. W. Haussermann* with him,) for the defendant.

RUGG, C.J. The plaintiff seeks to recover from the defendant in this action of contract by the first count in his declaration $1,500 alleged to have been paid for the purchase of shares of the capital stock of a corporation at a time when neither the defendant nor the directors or authorized officers of the corporation had filed with the commission of the department of public utilities notice of intention to sell shares of the capital stock of the corporation, whereby the sale was void. The second count for the same cause of action is for money had and received by the defendant to the plaintiff's use. The defendant pleaded in his answer general denial and laches. The case was tried upon an agreed statement of

facts. Thus it appears that the defendant in February, 1929, was a duly registered broker engaged in the brokerage business in Boston. "Some time prior to February 2, 1929," the defendant through an agent sold to one Gerard shares in the Shoe Lace Company, Ltd. Subsequently, the plaintiff, as the result of discussion with Gerard, instructed the latter to place his order for one hundred shares of stock in the same corporation. This order was sent through his agent to the defendant, who thereupon about February 7, 1929, purchased one hundred shares from a brokerage house in Boston and sent statement covering same to the plaintiff. On or about February 11, 1929, the plaintiff sent his check for $1,500, the purchase price of the shares, to the defendant and two days later the defendant sold and delivered the shares to the plaintiff. Neither the defendant nor any of his agents ever had communication with the plaintiff before the receipt of this order. When the order of the plaintiff was received by the defendant, the latter had not filed with the department of public utilities notice of intention to offer for sale any or all of the capital stock of said corporation. A notice of such intention was filed by another registered broker on February 15, 1929, and the stock was qualified on March 7, 1929. The plaintiff had no actual knowledge whether the defendant at the time of the sale to him had filed such notice of intention until January 13, 1931, shortly before the commencement of this action. The plaintiff on January 15, 1931, made tender to the defendant of the one hundred shares of stock and demanded return of the money paid therefor. The tender was refused and the plaintiff has the stock in his possession. He has received no dividends from the corporation and has not actively participated in its corporate affairs.

The trial judge denied various requests for rulings presented by the defendant, ruled that the sale was void, being in contravention of the sale of securities act (G. L. [Ter. Ed.] c. 110A) governing sales of securities, and found for the plaintiff. The Appellate Division reversed this decision and ordered judgment for the defendant. The plaintiff appealed.

The decision of the various questions presented depends upon the construction of controlling parts of St. 1921, c. 499, as amended, whereby c. 110A was added to the General Laws, now found in G. L. (Ter. Ed.) c. 110A, to which for convenience reference will chiefly be made, and which will be referred to as "said c. 110A."

1. The defendant first contends that, since the contract for the purchase of the shares of stock was fully executed, the plaintiff has no right to rescind.  This contention resolves itself into the question whether the intent of the Legislature as disclosed by the words of the statute was that a sale in violation of the statute should be absolutely void.  There is no express provision to that effect in the statute.  As throwing light upon this intent it is permissible in this connection to examine the history of the statute.  *Old South Association* v. *Boston,* 212 Mass. 299, 304–305.  *Hood Rubber Co.* v. *Commissioner of Corporations & Taxation,* 268 Mass. 355, 358, and cases cited.

By Res. 1920, c. 79, a commission was created to investigate the necessity or expediency of further legislation as to the sale, offering and advertising for sale of stocks and other securities issued by corporations.  That commission made a comprehensive report setting forth in considerable detail the great evil existing from lack of regulation of the sale of stock and other corporate securities and the enormous losses sustained annually by the people of the Commonwealth through sales to them of such securities of little or no value, and pointed out that in thirty-eight other States of the Union preventive legislation existed to remedy this evil.  With that report before it the General Court proceeded to enact a statute.  The title of said c. 110A as enacted in said c. 499 is "An Act to control the sale of securities, to register persons selling the same, and to prevent the fraudulent promotion and sale of fraudulent securities."  In general, it provides for filing with the commission a notice of intention to sell securities with a statement of data in considerable detail as to the securities and the corporation issuing the same, and for the periodic filing of statements of condition of such corporations.  The commis-

sion is empowered to forbid sale of such securities if of opinion that it is fraudulent or would result in fraud. Certain classes of securities are exempted from the operation of the act. Extended provision is made for the registration of brokers. There are heavy penalties for violation of the terms of the statute.

It is manifest from this legislative background as well as from its provisions that the statute was enacted for the protection of the public from fraud and imposition in the sale to them of securities of little or no value or based upon unsubstantial projects and schemes. The careful preliminary investigation by a commission, and the tenor of its report to the General Court containing a considerable body of information touching existing abuses and remedies tried in other jurisdictions, strongly support that view of the purpose of the legislation enacted. This has been declared to be the design of such legislation in decisions respecting laws of like nature in other jurisdictions. *Hall* v. *Geiger-Jones Co.* 242 U. S. 539, 550. *Ashley & Rumelin, Bankers* v. *Brady,* 41 Idaho, 160. *Goodyear* v. *Meux,* 143 Tenn. 287. The terms of said c. 110A must be interpreted and construed so as to effectuate the purpose of the Legislature ascertained from the several parts of the statute and the meaning fairly attributable to all its words considered in connection with the causes leading to its enactment, the subject to which it is applicable, the preëxisting state of the common and statutory law, the mischief to be remedied, and the main object to be accomplished, to the end that it be given an effect in harmony with common sense and sound reason. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 374, and cases cited. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148, and cases cited. The provisions of said c. 110A relevant in this connection are in § 5: "No security . . . [with exceptions not here material] shall be sold unless and until there shall have been filed with the commission by a person offering the same for sale or" by certain officers or authorized agents of the corporation issuing the security "a notice of intention to offer for sale the security named and specified in the notice; but within seven days, or such

further period as in any special case the commission may authorize, after filing said notice, the person or officers, or some one in their behalf, shall file with the commission a statement containing the information and data relative to the security offered and the issuing corporation, association or trust, specified in subdivisions (a), (b), (c) and (d) of section four, and in addition thereto a statement of the purposes to which the proceeds of the proposed issue are to be applied.  Upon and after the filing of such notice the said security may be sold and offered for sale by any broker or salesman registered under the provisions of this chapter, subject, however, to the provisions of the following section and subject to the right of the commission in its discretion to forbid its sale until the information required by this and the following section is filed with it and the commission has revoked its action in forbidding its sale." Section 6 provides in part that "Whenever the commission is of opinion from the information disclosed or in its possession that the sale of any security under section four or five or of any security exempted under any provision of section three, is fraudulent or would result in fraud, it shall make a finding to that effect.  Upon the making of such finding, such security shall not be sold or offered for sale until, and except in accordance with, further action by the commission or by the court as provided in this chapter." It is enacted in § 10 (c): "Nothing in this chapter shall limit any statutory or common law right of any person to bring any action in any court for any act involved in the sale of securities . . .," and in § 15, that "Whoever violates any provision of this chapter shall be punished by a fine" or imprisonment or both.

These requirements amount to a mandate in unequivocal terms to the effect that there can be no sale until the notice required by § 5 has been filed.  When the notice has been filed, then the commission may, if it sees fit, prohibit the sale of the stock.  To hold the provision of § 5 forbidding sale of securities until notice is filed as merely directory would frustrate a main purpose of the statute.  It would permit sales of fraudulent stock, without redress for the de-

frauded purchasers, during a period of at least seven days and such further time as might be required for adequate examination by the commission of the information required to be submitted to it. The case at bar in this particular is distinguishable from *C. B. Rogers & Co.* v. *Simmons*, 155 Mass. 259, where clearly the statute was merely directory.

The conclusion seems irresistible that the purpose of the Legislature, as disclosed by the statutory words, and its chief design were that contracts made in violation of the statute should be void. In no other way can the individuals for whose protection the statute was enacted secure genuine relief from the evils liable to be inflicted upon them by unrestrained and unregulated sales of fraudulent securities. The statute here in question falls within the large class whereby it has been enacted that contracts are prohibited chiefly for the benefit of the person paying money or other consideration and the receiver is the principal offender. In such instances the latter may be compelled to refund. In construing statutes of that nature, it is established doctrine that a contract prohibited by the statute under penalty made for the benefit of the person parting with his valuable property will be void at his instance in like manner as if in terms declared to be a nullity. The plaintiff as purchaser in ignorance of the fact that as to the shares of stock sold him by the defendant there had been failure to comply with the statute was not in *pari delicto* with the defendant. The prohibitions of the statute did not apply to him at all but only to the seller. The aim of the statute was to protect the class to which the plaintiff belongs against that to which the defendant belongs. Therefore, the sale being void, the plaintiff is entitled to recover the price paid upon rescission of the transaction. The plaintiff is only seeking "to recover his own money and to prevent the defendant from unjustly retaining the benefit of his own illegal act," an act which had its inception and fruition in violation of a highly penal statute. *Morville* v. *American Tract Society*, 123 Mass. 129, 137. *White* v. *Franklin Bank*, 22 Pick. 181, 186. *Atlas Bank* v. *Nahant Bank*, 3 Met. 581, 586. *Berman* v. *Coakley*, 243 Mass. 348, 351. *Coe* v. *Portland*

*Farmers' Elevator Co.* 236 Mich. 34, 36.   *Pollak* v. *Staunton,*
210 Cal. 656.   *Karamanou* v. *H. V. Greene Co. Inc.* 80 N. H.
420.   *Vercellini* v. *U. S. I. Realty Co.* 158 Minn. 72, 74.
*Thomas* v. *Richmond,* 12 Wall. 349, 356.   *Logan County
National Bank* v. *Townsend,* 139 U. S. 67, 74–76.   *Smart* v.
*White,* 73 Maine, 332, 336–339.   *Tracy* v. *Talmage,* 14 N. Y.
162.   *Irwin* v. *Curie,* 171 N. Y. 409.   Williston on Contracts,
§ 1789.   See 13 C. J. 498, for collection of cases.   Compare
*Miller* v. *Post,* 1 Allen, 434;   *Allen* v. *Hawks,* 13 Pick.
79, 82;   *Huey* v. *Passarelli,* 267 Mass. 578, 581–582, and
cases there reviewed.   The enactment of said c. 110A
would signally fail of its beneficent object if a purchaser
ignorant in fact of its violation by the seller until after the
full execution of the contract were to be denied relief.   For
the same reason the doctrine of cases illustrated by *Board
of Survey of Lexington* v. *Suburban Land Co.* 235 Mass. 108,
and *Somers* v. *Commercial Finance Corp.* 245 Mass. 286,
does not restrict this interpretation of the statute.   The
circumstance that the statute under consideration in *Adams*
v. *Goodnow,* 101 Mass. 81, contained express provision as to
making void the contracts forbidden does not militate
against the conclusion here reached.

The defendant urges that a contrary conclusion ought
to be reached because of certain facts in connection with
the legislative history of the statute.   A draft act annexed
to the report of the commission presented to the General
Court in 1921 and under consideration by it when said
c. 110A was enacted contained a declaration in express
terms that contracts for sale of securities in contravention
of its terms should be void.   That provision was not em-
bodied in said c. 110A when enacted.   In 1924 and again
in 1931 propositions for an amendment by adding to said
c. 110A a somewhat similar provision were not adopted by
the Legislature.   Of the statutes of this general nature said
to exist in 1921 in thirty-eight other States of the Union,
only five as far as we have been able to discover contained
an express provision to this effect.   This legislative back-
ground affords color for argument that the intent of the
Legislature was not to make such contracts void.   But we

are of opinion that the plain words of the statute render such contracts void under established canons of statutory interpretation without express words to that effect.

Courts of other jurisdictions in construing statutes similar to said c. 110A have generally held that contracts violative of their provisions are void without express words to that effect. *Reilly* v. *Clyne*, 27 Ariz. 432, 442–443. *Blanks* v. *American Southern Trust Co.* 177 Ark. 832, 839. *Edward* v. *Ioor*, 205 Mich. 617, 625. *Rhines* v. *Skinner Packing Co.* 108 Neb. 105, 108. *Vercellini* v. *U. S. I. Realty Co.* 158 Minn. 72. *Pennicard* v. *Coe*, 124 Ore. 423, 434–435. *Ashley & Rumelin, Bankers* v. *Brady*, 41 Idaho, 160, 166. *Karamanou* v. *H. V. Greene Co. Inc.* 80 N. H. 420. *National Industrial Fire Ins. Co.* v. *Great Southern Fire Ins. Co.* 177 Ky. 56, 60–61. *Biddle* v. *Smith*, 148 Tenn. 489, 494. So far as we are aware, there are only two decisions to the contrary. *Warren People's Market Co.* v. *Corbett*, 114 Ohio St. 126. *Watters & Martin, Inc.* v. *Homes Corp.* 136 Va. 114. The latter may be distinguished because of differences in the statute there considered from said c. 110A.

2. The defendant further contends that the plaintiff has failed to prove that the sale of securities act applies to the transaction in question. This contention cannot in our opinion be sustained. Among the agreed facts are recitals that a notice of intention to offer for sale the stock of the corporation in question was filed on February 15, 1929, and that "the stock was qualified by the department of public utilities on March 7, 1929." These statements with their natural implications show that the stock was of a kind requiring the action provided by §§ 5 and 6 of the act, and did not fall within the classes of stock described in the exceptions created by § 3 (b)–(p) both inclusive. The public officers by whose action the stock could be "qualified" had no authority to deal with the situation unless the stock was within the scope of the act and not excluded by its exceptions. The inference arises that they were acting in accordance with and not outside the duty imposed by the act. Every presumption is to be indulged in favor of such officers that the stock was of a kind to which the pro-

visions of said c. 110A were applicable and thus within their jurisdiction. *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 17, and cases cited. In the absence of anything to the contrary, the agreed facts contain enough to negative the exceptions set forth in § 3 (b)–(p) inclusive, and to show that the stock comes within the prohibition of § 5, even if it be assumed without so deciding that the burden of proof in this respect rests upon the plaintiff under the rule stated in *Ansell* v. *Boston,* 254 Mass. 208, and the cases there cited. See in this connection *People* v. *Love,* 310 Ill. 558, 567; *Kreutzer* v. *Westfahl,* 187 Wis. 463, 478.

The sale in question was not a sale within the exemption in § 3 (a) of said c. 110A, to the effect that the statute shall not apply to "Any isolated sale of any security by the owner thereof, or his representative, for the owner's account, such sale not being made in the course of repeated and successive transactions of a like character by such owner or on his account by such representative, and such owner or representative not being the underwriter of such securities." The agreed facts show that the defendant was a broker engaged in the brokerage business as distinguished from a mere owner of stock. The sale was one made in consequence of an order placed by the plaintiff, to comply with which the defendant bought the stock for immediate sale and transfer to the plaintiff. The sale to the plaintiff was not made by the defendant in his capacity as owner but as broker. The word "owner" in § 3 (a) is used in contradistinction to the words "Broker" and "Salesman," whose occupations are defined in § 2 (e) (f), and for whose registration, regulation and supervision extensive and detailed provisions are made in §§ 8–11, both inclusive, of said c. 110A. The exception in § 3 (a) is designed for the benefit of those persons who, not being brokers or salesmen, desire to sell securities which they happen to own without splitting their holdings so as to make repeated and successive sales and without being underwriters of such securities. It is also an agreed fact that, "Some time prior" to the sale in question, the defendant had made another sale of the same stock. This statement in its context in the agreed facts implies that such

earlier sale was reasonably near in point of time to the sale to the plaintiff. The circumstances of the transaction already narrated indicate that the defendant was not underwriter of the stock in question, although in view of all the other factors disclosed that point is not essential to the present decision. It follows that the transaction in question was not within the exception created by § 3 (a). *People v. Weese,* 225 Mich. 480, 484. *Smith* v. *Crawford,* 228 Ky. 420, 426. *State* v. *Swenson,* 172 Minn. 277, 282–283.

The defendant further urges that by said § 5 already quoted the filing of "notice of intention to offer for sale the security named" is required only of a "person offering the same for sale," and that the agreed facts show that the defendant did not offer the stock in question for sale because the plaintiff solicited its purchase without offer by the defendant. Although this contention finds some support in a literal reading of parts of the section, it is too narrow a construction as applied to the facts in the light of the purpose of the statute and all its provisions. The main prohibition of said § 5 is against sales of securities. Its precise words are that "No security . . . shall be sold" until after compliance with specified prerequisites. The subsequent provisions are ancillary and must be interpreted to effectuate the positive preceding prohibition. The provisions import a construction to the word "sale" (itself a word of comprehensive signification, *Osgood* v. *Tax Commissioner,* 235 Mass. 88, 90, 91), sufficiently wide to imply an offer to sell on the part of the seller as well as a purchase by the buyer. The defendant made a voluntary sale of the stock in question to the plaintiff. In a general and popular sense such a sale cannot take place without an offer on the part of the owner to sell upon terms stipulated. Property may be offered for sale without personal solicitation to anybody to become a purchaser. The defendant did not own the stock until he purchased it for the express purpose of offering to sell it to the plaintiff. The design of the statute is to protect the public, not from solicitation for sales of securities, but from fraudulent securities. That purpose would fail of adequate enforcement if limited to instances

where the seller makes a preliminary definite offer to a particular buyer. By placing the emphasis of said § 5 on the prohibition of sales, where apparently the Legislature intended it should be placed, the statute may be given an effectual meaning without violence to any of its words but by attributing to them a natural signification in view of the chief aim of the act. See *State* v. *Ahlgren*, 158 Minn. 334, 338–339.

The plaintiff in all the circumstances disclosed was not chargeable to his harm with constructive knowledge of the fact that the defendant had not complied with said c. 110A. He had a right to assume that the defendant was not violating the law. There is nothing in the record to support a contention that the plaintiff has waived his rights under said chapter, or that he has been guilty of laches in enforcing them. *Suburban Land Co. Inc.* v. *Brown*, 237 Mass. 166, 168. *Stewart* v. *Finkelstone*, 206 Mass. 28, 35–36.

3. The final contention of the defendant is that said c. 110A is violative of art. 12 of the Declaration of Rights of the Constitution of this Commonwealth and of the due process of law clause of art. 14 of the Amendments to the Constitution of the United States. Specifically, his position is that said § 3 (a) is so vague and indefinite in exempting from the provisions of the act an "isolated sale" of a security not "made in the course of repeated and successive transactions of a like character" and not made by an underwriter of the securities sold, that "men of common intelligence must necessarily guess at its meaning and differ as to its application." In examining this contention regard must be had to the settled underlying principle that all rational presumptions are to be made in favor of the validity of a statute. Its enforcement will not be refused unless its conflict with the Constitution is established beyond reasonable doubt. It will not be treated as void unless it cannot reasonably be construed in harmony with the fundamental law. *Perkins* v. *Westwood*, 226 Mass. 268, 271. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *Commonwealth* v. *Higgins*, 277 Mass. 191. General statements of the principles governing the definiteness of phraseology

requisite in the statutes creating crime have frequently been made. In *Commonwealth* v. *Pentz*, 247 Mass. 500, a statute penalizing any person who operated upon a public way "a motor vehicle so that the lives or safety of the public might be endangered" was held to meet all constitutional requirements. It was said at page 506: "Statutes which create crimes must be definite in specifying conduct which is commanded or prohibited. They must afford some comprehensible guide, rule or information as to what must be done or what must be avoided to the end that the ordinary member of society may know how to comply with its requirements. 'Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid.' *United States* v. *Brewer*, 139 U. S. 278, 288." Following this principle a statute was upheld in *Commonwealth* v. *Reilly*, 248 Mass. 1, describing as one element of a crime that the accused "knew, or might on reasonable investigation have ascertained" that advertising assertions published by him were "untrue, deceptive or misleading."

Questions as to vagueness of statutes have frequently arisen in the Supreme Court of the United States and have been discussed with fullness. In *Connally* v. *General Construction Co.* 269 U. S. 385, at pages 391–392, occurs this language: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. . . . The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement. But it will be enough for present purposes to

say generally that the decisions of the court upholding stat-
utes as sufficiently certain, rested upon the conclusion that
they employed words or phrases having a technical or other
special meaning, well enough known to enable those within
their reach to correctly apply them, *Hygrade Provision Co.*
v. *Sherman*, 266 U. S. 497, 502; *Omaechevarria* v. *Idaho*,
246 U. S. 343, 348, or a well-settled common law meaning,
notwithstanding an element of degree in the definition as
to which estimates might differ, *Nash* v. *United States*,
229 U. S. 373, 376; *International Harvester Co.* v. *Kentucky*,
*supra*, p. 223, [234 U. S. 216] or, as broadly stated by Mr.
Chief Justice White in *United States* v. *Cohen Grocery Co.*,
255 U. S. 81, 92, 'that, for reasons found to result either
from the text of the statutes involved or the subjects with
which they dealt, a standard of some sort was afforded.'"
By this decision a statute was stricken down prohibiting
under penalty payment to their workmen by contractors
with the State or other governmental subdivisions of "less
than the current rate of per diem wages in the locality where
the work is performed." (Compare *Campbell* v. *New York*,
244 N. Y. 317, 326–329; *Ruark* v. *International Union of
Operating Engineers*, 157 Md. 576, 583.) The statute under
consideration in *Cline* v. *Frink Dairy Co.* 274 U. S. 445,
declared in substance that enumerated combinations were
unlawful and void, with provisos that they are not to be
regarded as unlawful (1) if their purpose "shall be to obtain
only a reasonable profit in such products or merchandise
as can not yield a reasonable profit except by marketing
them under the combinations previously condemned";
and (2) if the commodities manufactured or sold are of
"a class that can only be dealt with at a reasonable profit
by such previously condemned trust methods." In holding
that statute violative of the constitutional guaranty of due
process of law, it was said at pages 456, 457: "These pro-
visos make the line between lawfulness and criminality to
depend upon, first what commodities need to be handled
according to the trust methods condemned in the first part
of the Act to enable those engaged in dealing in them to
secure a reasonable profit therefrom; second, to determine

what generally would be a reasonable profit for such a business; and third, what would be a reasonable profit for the defendant under the circumstances of his particular business"; and at page 465: "But it will not do to hold an average man to the peril of an indictment for the unwise exercise of his economic or business knowledge involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result. When to a decision whether a certain amount of profit in a complicated business is reasonable is added that of determining whether detailed restriction of particular anti-trust legislation will prevent a reasonable profit in the case of a given commodity, we have an utterly impracticable standard for a jury's decision. A legislature must fix the standard more simply and more definitely before a person must conform or a jury can act." In the application of these controlling principles decisions have been rendered upholding, because not vague or wanting in definiteness, statutes requiring the keepers of hotels in case of fire therein "To do all in their power to save" their guests and inmates, *Miller* v. *Strahl*, 239 U. S. 426, 431, 434; denouncing contracts and arrangements "reasonably calculated" to fix and regulate the price of commodities and prohibiting acts which "tend" to accomplish prohibited results, *Waters-Pierce Oil Co.* v. *Texas* (No. 1), 212 U. S. 86, 108–110; prohibiting "unfair methods of competition," *Sears, Roebuck & Co.* v. *Federal Trade Commission*, 258 Fed. Rep. 307, 311; penalizing such contracts and combinations "as, by reason of intent or the inherent nature of the contemplated acts, prejudice the public interests by unduly restricting competition or unduly obstructing the course of trade," *Nash* v. *United States*, 229 U. S. 373, 376; denouncing the wilful printing, circulation, displaying and otherwise spreading abroad printed matter advocating, inciting or having a tendency to encourage or incite an actual breach of the law, *Fox* v. *Washington*, 236 U. S. 273, 277; prohibiting the sale or offer for sale of meat or meat preparation falsely represented to be

"kosher" or as having been prepared under and of a product "sanctioned by the orthodox Hebrew religious requirements," *Hygrade Provision Co. Inc.* v. *Sherman,* 266 U. S. 497; against suffering sheep to be herded, grazed or pastured "on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower," *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348; making it a defence in an action for rent during a declared war emergency that the rent agreed is "unjust and unreasonable and that the agreement under which the same is sought to be recovered is oppressive," *Edgar A. Levy Leasing Co. Inc.* v. *Siegel,* 258 U. S. 242, 249; limiting rent recoverable during a declared war emergency to that which is "reasonable," *Block* v. *Hirsh,* 256 U. S. 135, 157; penalizing one operating a motor vehicle on a highway at a rate of speed to endanger life, limb or property, *Miller* v. *Oregon,* 273 U. S. 657, as explained in *Cline* v. *Frink Dairy Co.* 274 U. S. 445, 464–465. *Bandini Petroleum Co.* v. *Superior Court,* 284 U. S. 8, 16, 17, 18. *Sproles* v. *Binford,* 286 U. S. 374, 393. Decisions have been rendered invalidating, because wanting in certainty and precision, statutes prohibiting under penalty "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," *United States* v. *L. Cohen Grocery Co.* 255 U. S. 81, 89–92; *A. B. Small Co.* v. *American Sugar Refining Co.* 267 U. S. 233, 239, agreements for controlling the price of harvesters by manufacturers and enhancing the price above their real value and selling the same at a price in excess of their "real value," *International Harvester Co.* v. *Kentucky,* 234 U. S. 216, combinations for fixing, controlling or regulating the price of any commodity or article by raising or depreciating, or attempting to raise or depreciate, such price, "above or below its real value," *Collins* v. *Kentucky,* 234 U. S. 634, 637; *Wabash Railway* v. *O'Bryan,* 285 Fed. Rep. 583.

It is to be observed at the outset that said c. 110A does not reach into the field of economic adventure or social theory where terms may be new and nomenclature without definite and settled signification. Its purpose is to protect people

from fraud in the purchase of corporate securities. Scarcely any subjects in the common law are more familiar to popular understanding than fraud and sales and securities of corporations. Almost everybody has some knowledge concerning them. Courts have been dealing with fraud and sales from early times, and with securities since corporations became business instrumentalities in wide use, now a good many years ago. They are and have been through a long period objects for frequent legislative enactments.

The words of the statute here assailed exclude from the general prohibition of sales of the designated securities "Any isolated sale of any security by the owner . . . not being made in the course of repeated and successive transactions of a like character. . . . " It is not contended that there is ambiguity about the words "isolated sale." They do not seem susceptible of misconstruction. The word "Security" is defined with adequate precision in § 2 (c) of said c. 110A. The attack is centered on the words "in the course of repeated and successive transactions of a like character." Statutes containing provisions similar to those here questioned were upheld as constitutional in *Hall* v. *Geiger-Jones Co.* 242 U. S. 539, *Caldwell* v. *Sioux Falls Stock Yards Co.* 242 U. S. 559, and *Merrick* v. *N. W. Halsey & Co.* 242 U. S. 568. The point as to vagueness of the statutory language does not appear, from the abstracts printed in the reports, to have been argued by distinguished counsel in those cases and it was not mentioned in the opinions of the court. Therefore, the question cannot be treated as having been so decided as to constitute a precedent. *Webster* v. *Fall,* 266 U. S. 507, 511. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343–344. Those decisions are not regarded as authoritative on this point. The words "repeated and successive transactions" in their context are not too indefinite to inform the ordinary person of their signification. Sales of securities manifestly constitute the "transactions." The words "repeated and successive" are used by way of contrast to the word "isolated" employed earlier in the same sentence. In such context an "isolated" sale means one standing alone,

disconnected from any other, and "repeated and succes-
sive" mean transactions undertaken and performed one after
the other.  We think that two sales of securities, made one
after the other within a period of such reasonable time as to
indicate that one general purpose actuates the vendor and
that the sales promote the same aim and are not so detached
and separated as to form no part of a single plan, would be
"repeated and successive transactions."  The term "reason-
able time," which is necessarily implied in that connection
from the words of the statute, has no fixed and unvarying
definition, but it is a term well known to the common law
and has a long history in judicial decision.  *Seaver* v. *Lincoln*,
21 Pick. 267.  *Howe* v. *Taggart*, 133 Mass. 284, 287.  *Camp-
bell* v. *Whoriskey*, 170 Mass. 63, 67.  *Lydig* v. *Braman*, 177
Mass. 212, 219.  *Plymouth County Trust Co.* v. *Scanlan*, 227
Mass. 71.  Thus it has "a well-settled common law meaning,
notwithstanding an element of degree in the definition as
to which estimates might differ."  *Cline* v. *Frink Dairy Co.*
274 U. S. 445, 459.  It is not essential to the validity of the
statute that it prescribe the exact period of time within which
"repeated and successive transactions" must occur because
they must be within a reasonable time fixed by the common
law in the light of all the circumstances.  The phrase "trans-
actions of a like character" in its context refers to "sale of
any security" mentioned earlier in the same sentence.  The
dominant factor is "transactions," and not the particular
security.  But the transactions must be confined to sales of
such securities as fall within the prohibition of § 5 and are
not excluded from its operation by § 3 (b)–(p) inclusive, or
other provisions of said c. 110A.  The words "like character"
import resemblance in salient features and not identity in all
particulars.  *Bliss* v. *Bliss*, 221 Mass. 201, 211.  Thus con-
strued, we think that said § 3 (a) is not open to the objection
of vagueness on constitutional grounds.  The ordinary person
can understand what he is permitted to do and what he is for-
bidden to do.  The statute is sufficiently definite considering
the nature of the evil which the Legislature desired to curb.

Statutes having provisions similar to those here attacked

have been enacted in numerous States.* This body of legislation of the same essential phraseology is an impressive indication of a widespread belief in its validity among the framers of statutes and the members of law-making bodies throughout the United States.

The conclusion here reached is supported by *State v. Swenson,* 172 Minn. 277, 282, and *State v. Gerritson,* 124 Ore. 525, 532–533, where the precise point was decided. See also *Saunders v. State,* 172 Ga. 770. It is contrary to *People v. Pace,* 73 Cal. App. 548, 562–563, and *State v. Brillhart,* a decision by the appellate court of Indiana, apparently not reported officially and to be found in Vol. 5, U. S. Daily, 3168, December 17, 1930. Those are not decisions by the highest courts of their respective States and we are not inclined to follow them. A considerable body of authority, in addition to cases heretofore cited, upholds the constitutionality of statutes similar to said c. 110A, after full discussion but without referring to the point here raised. *Blanks v. American Southern Trust Co.* 177 Ark. 832, 839. *Stewart v. Brady,* 300 Ill. 425. *Investment Reserve Corp. v. Michigan Securities Commission,* 238 Mich. 606. *Hampton Realty Co. v. Middleton,* 220 Ky. 603. *Biddle v. Smith,* 148 Tenn. 489.

The constitutional principle declared in art. 12 of the Declaration of Rights of the Constitution of this Commonwealth is this: "No subject shall be held to answer for any

*Alabama, Code (1923) § 9880 (3); Acts of 1927, No. 481; Acts of 1931, No. 656. Arizona, Code (1928) § 1898.
Arkansas, Acts of 1927, Act 354, § 12; Acts of 1931, Act 109.
Georgia, Acts of 1920, No. 754, § 9 (1); Acts of 1922, No. 551.
Illinois, Laws of 1919, page 351; Laws of 1921, page 357; Laws of 1925, page 549; Laws of 1929, page 689; Laws of 1931, page 820, § 5 (1).
Kansas, Laws of 1929, c. 140, § 3 (1); (1930) Supplement to Revised Statutes of 1923, § 17–1225 (1).
Kentucky, Acts of 1926, c. 76, § 4 (c); Kentucky Statutes (Baldwin 1930) § 883 e–4; Acts of 1932, c. 17, § 26 (c).
Michigan, Public Acts of 1929, No. 136; Michigan Compiled Laws (1929), vol. 2, c. 188, 9773, § 5 (c).
Minnesota, Laws of 1925, c. 192, § 3 (1); Laws of 1927, c. 66; Minnesota Statutes (Mason 1927) § 3996–3 (1).
Missouri, Laws of 1929, page 387, § 5 (c); Missouri Revised Statutes (1929) vol. 2, § 7727 (c).
New Mexico, Laws of 1921, c. 44, § 13; New Mexico Statutes Annotated (1929) § 32–713.
Ohio, Laws of 1929, page 221, § 4 (1); Code of Ohio (Throckmorton 1930) § 8624–4.

crimes or offence, until the same is fully and plainly, substantially and formally, described to him; . . . And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land." These guaranties of individual rights are at least as extensive and cogent as are those of the Fourteenth Amendment to the Federal Constitution in the particulars involved in the case at bar. In *Commonwealth* v. *Pentz*, 247 Mass. 500, and *Commonwealth* v. *Reilly*, 248 Mass. 1 (to which extended reference has already been made), statutes more closely approaching the line of vagueness and ambiguity than does said § 3 (a) were upheld against contentions similar to those here put forward. Those decisions are sufficient to justify the constitutionality of the statute here attacked. The authorities already cited and reviewed seem to us to support the conclusion that the statute is not open to successful attack as being violative of rights secured under each Constitution.

The points here discussed did not arise in *Latherizer Corp.* v. *Department of Public Utilities*, 278 Mass. 454, but that decision is in harmony with what has been said.

The result is that in our opinion the trial judge rightly denied all the requests for rulings presented by the defendant, and in finding for the plaintiff committed no error of law. The order of the Appellate Division is reversed. Judgment is to be entered for the plaintiff on the finding of the trial judge.

*So ordered.*

---

Oklahoma, Laws of 1919, page 77, § 15; Compiled Statutes (1921) art. 62, c. 6, § 2284; Laws of 1931, c. 24, art. 11, § 5 (c).

Pennsylvania, Laws of 1927, No. 165, page 273, § 2, par. c, (3).

Rhode Island, General Laws (1923) c. 273, § 2 (a); Laws of 1926, c. 796; Laws of 1929, c. 1379.

South Dakota, Laws of 1927, c. 206, § 4 (1); Laws of 1929, c. 237; Compiled Laws (1929) vol. 2, § 10126–S.

Utah, Laws of 1925, c. 87, § 4 (c); Laws of 1929, c. 79.

Vermont, Acts of 1929, No. 93, § 5 (c).

Virginia, Laws of 1928, c. 529, § 4 (n); Code of 1930, § 3848 (50).

Washington, Laws of 1923, c. 69, § 2 (5) (c); (1927) Supplement to Remington's Compiled Statutes of Washington (1922), § 5853–2 (5) (c).

West Virginia, Acts of 1925, c. 66, § 5 (c); Official Code (1931) c. 32, art. 1, § 4 (c).

Wyoming, Compiled Statutes (1920) § 5115; Revised Statutes (1931) § 13–113.