RATLIFFE *et al. v.* HARTSFIELD COMPANY.

No. 10540.   DECEMBER 16, 1935.   REHEARING DENIED FEBRUARY 21, 1936.

*Sutherland, Tuttle & Brennan, William T. Dean, George C. Dean,* and *E. R. Kane,* for plaintiffs in error. *M. J. Yeomans,* attorney-general, *B. D. Murphy* and *George L. Goode,* as amici curiæ.

*Robert T. Efurd, Mose S. Hayes,* and *Noah J. Stone,* contra.

*Burress & Dillard,* for person at interest, not party.

HUTCHESON, Justice. The plaintiff contends that the investment certificate does not come within the purview of the securities act, because it was issued by the plaintiff as a building and loan association or like association under the Code of 1933, § 16-101, and as such should be considered as a class A or class B security under said act. The act of 1920 (Ga. L. 1920, p. 251) defines "securities" as "stocks, bonds, debentures, notes, certificates of participation, certificates of shares of interest, preorganization certificates and sub-

scriptions, certificates evidencing shares in trust estates or associations, and profit-sharing certificates. The act of 1922 (Ga. L. 1922, p. 156) declares: "For the purposes of this act, the word 'securities' shall further include all contracts for the sale of territorial rights for which a consideration is paid or to be paid, and all contracts which entitle the purchaser thereof to receive from the vendor compensation, whether the same be for services to be performed, for discounts or special rates not afforded the general public on goods to be purchased; or any other compensation whatever accruing to the purchaser solely by virtue of the purchase of such contract." Code of 1933, § 97-102. These words are broad enough to evidence an intention to include all classes and forms of obligations on the part of the issuer, evidencing a right in the owner of such obligation to receive a share of the profits of the business or venture, either directly or indirectly, or to a repayment of his money with interest for the use thereof, unless excepted under the other provisions of the securities act. The act of 1920 in section 8, defining securities under Class A as exempt from the operation of the act, expressly listed "those issued by any . . building and loan association." The amendatory act of 1922 struck all of section 8 of the act of 1920, and enacted in lieu thereof a new section 8 (Code of 1933, § 97-302), which omitted to exempt expressly from the operation of the act "those issued by any . . building and loan association." The effect of this amendment was to leave the regulation and sale of securities issued by building and loan associations to be determined from other provisions of the act as amended.

Securities under the act are divided into four classes, A, B, C, and D. Classes A and B are exempt from the operation of the act. Class C includes certain other securities, and Class D includes all other securities not included in classes A, B, and C. The Code of 1933, § 97-301, divides the securities into the respective classes. Paragraphs 1 and 2 of this section are as follows: "(1) Securities, the inherent qualities of which assure their sale and disposition without the perpetration of fraud, which shall be known as securities in class 'A.' (2) Securities, the inherent qualities of which, or which from the nature of one or of both parties to the sale thereof, assure the sale and disposition without the perpetration of fraud, which shall be known as securities in class 'B.' While the lan-

guage used in these paragraphs might, on its face, relegate the investment certificate in the case at bar either to class A or to class B (assuming that said certificate is a security the inherent qualities of which assure its sale and disposition without the perpetration of a fraud), the language so used is restricted by the specific definitions of class A and class B securities as set forth in §§ 97-302, 97-303. A careful study of these definitions discloses that the character of the certificate does not place it within any of the stated exceptions. The certificate not being expressly excepted from the operation of the securities law, it becomes necessary to determine the purpose of the law and the intention of the legislature in passing it, and whether or not the particular transaction involved here was one that the legislature intended to regulate. Securities acts are generally known as "blue-sky laws," and are intended "to protect the public against the imposition of unsubstantial schemes and the securities based upon them" (Hall v. Geiger-Jones Co., 242 U. S. 539, 550, 37 Sup. Ct. 217, 61 L. ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643) ; and "for the protection of the public from fraud and imposition in the sale to them of securities of little or no value or based on insubstantial projects and schemes." Kneeland v. Emerton, 280 Mass. 371 (183 N. E. 155, 87 A. L. R. 1). Chief Justice Russell discussing the Georgia securities act, in Felton v. Highlands Hotel Co., 165 Ga. 598, 608 (141 S. E. 793, 57 A. L. R. 987), said: "The purpose and intent of the act is to prohibit organizers and promoters, whether foreign or domestic, who organize and promote the sale of what is commonly known as 'blue-sky stock,' from doing business without complying with the statutes. The further purpose and intent of the act was to guard and protect an unsuspecting and trusting public from what are commonly known as 'wild-cat' organizers and promoters and their agents." Statutes must be "construed so as to effectuate the purpose of the legislature, ascertained from the several parts of the statute and the meaning fairly attributable to all its words, considered in connection with the causes leading to its enactment, the subject to which it is applicable, the pre-existing state of the common and statutory law, the mischief to be remedied, and the main object to be accomplished, to the end that it be given effect in harmony with common sense and sound reasoning." Kneeland v. Emerton, supra.

Assuming that the sale of the certificate in this case was made only for the purpose of qualifying the borrower as a member, and that its purchase-price then paid in at the time of the maturity of the loan note would be applied without qualification to the liquidation of the note, and the certificate would then be canceled, so as to allow the loan transactions of the plaintiff to be carried out in the manner required as a building and loan association or like association (Code of 1933, § 16-101), and that the issuing of such certificate would be restricted to that purpose, and assuming under such circumstances it would be held that, even though such transactions are not expressly exempted from the operation of the act, it was not the purpose of the act to regulate the sale of such certificates, there is no evidence showing that the sale of the certificate was so restricted. But there is evidence which plainly shows the contrary. The face of the certificate shows no restriction or qualification which would confine the issuing of the certificates to loan transactions. The president of the plaintiff testified that these certificates were sold in the usual course of business, usually in amounts of $350 and above. The transfer on the certificate shows it was transferred to secure a loan, and recited that after the loan should become due the plaintiff was authorized to apply all payments made on the purchase-price of the certificate to the liquidation of the loan note. This stipulation is not mandatory, but is merely permissive. There is nothing in the transaction which would prevent the purchaser of the certificate from paying the purchase note and also the loan note and retaining the certificate. Under these circumstances, the fact that the loan feature was originally attached to the purchase of the certificate would not take it out of the operation of the securities law.

It is also contended that the investment certificate is not a security, because it amounts only to a borrowing of money by the plaintiff from the purchaser of the certificate. In support of this contention the plaintiff cites *Cook* v. *Equitable Building & Loan Asso.,* 104 *Ga.* 814 (30 S. E. 911) ; *Savannah Real Estate &c. Co.* v. *Silverberg,* 108 *Ga.* 281 (33 S. E. 908). In each of those cases the purchaser had paid the full face value of the instrument purchased, and no loan back to the purchaser, with the purchased instrument as security, was involved. Furthermore, the securities act expressly includes "bonds, debentures, notes," as securities within

the purview of the act, unless excepted elsewhere therein. Bonds, debentures, and notes are evidences of indebtedness and are issued for the purpose of borrowing money. So it would appear that the legislature in enacting the securities act had no intention to exempt a security from regulation merely because it was given as evidence of an indebtedness due by the issuer to the purchaser.

*Judgment reversed. All the Justices concur.*

BECK, P. J., and ATKINSON, J., concur in the judgment.