Bolster, C. J.,
dissenting: I am unable to agree with the majority. Nowhere in the commission report of 1921, in the legislation of that year, in the re-examination of that law in 1931 (House 1299) or in the statute of 1932, Ch. 290, can I find anything which says that if there is a change in corporate structure, affecting the rights of holders of common shares or the value of those shares, common shares must be re-registered before sale. On the other hand, plenary power is given the commission to receive complaints and to stop the sale of stock, though previously qualified. It is well known that in the life of many corporations changes occur which affect the value of common stock, and the rights and powers of its holders. Many such changes may be vital, others trivial. It might fairly be expected that had the legislature thought this a matter for positive law, rather than something to be left to more flexible treat *541 ment within the department, it would have marked out a dividing line. There is none. For a court to assume to draw a line according to its notion of what the legislature would or should have done seems to me pure judicial legislation. Discovery of a casus omissus does not empower a court to fill the void. The qualified stock of the Farr Alpaca Co. was its common stock. What the plaintiff bought of the defendant was the common stock of that company. To denominate it a different stock because its attributes have changed is a mere play on words employed to accomplish a result deemed desirable, relying on the central purpose of the act rather than on anything that can be extracted from its language. I think what is needed is a generic change. If the par were doubled rather than halved, if it were turned into no-par stock, if senior securities were issued, or voting rights were pooled or changed, the common stock might be powerfully affected, perhaps for the better, perhaps for the worse, but genetically it would still be the same common stock of the company.
I am further of opinion that on the evidence in the case it could be found that this was an isolated sale within the meaning of the statute, particularly as that expression was broadened, following the commission’s recommendation, by Stat. 1932, Oh. 290, §3. Exhibit B recites a sale “as owner”, if that now makes a difference. The dictum in Kneeland v. Emerton, 280 Mass. 371, 383, that '' The exception in §3 (a) is designed for the benefit of those persons who, not being brokers or salesmen, desire to sell securities which they happen to own” was employed in the statement of an antithesis. It had reference to the capacity in which the defendant acted in the transaction there in hand. The 1932 statute did not apply. I do not think the court should be understood as laying down a rule that if one privately owned a single share of stock, he could not sell it *542 without first qualifying it, just because he happened to have employment as a broker or salesman. The language of the statute certainly carries no such meaning.
In my opinion the trial judge erred in excluding the evidence of other sales by defendant, but if I am right in my conclusion as to the need of qualifying the $50. par stock that error is immaterial. I think the report should be dismissed.